MARJORY CHAPMAN, Respondent, v. MONTGOMERY W. CHAPMAN, Appellant.*

Third Department, December 19, 1957.

* The prevailing opinion in this case supersedes the prevailing opinion previously published at 5 A D 2d 96.

258

*Herzog, Nichols & Leahy* for appellant.

*Thomas J. McCarthy,* *Albert G. Avery* and *Franklin M. Peabody* for respondent.

*Frederick M. Reed, Attorney-General of the State of Vermont (Stephen B. Richardson, Deputy Attorney-General,* of counsel), *amicus curiæ.*

FOSTER, P. J. This appeal poses as its prime issue whether a judgment of the courts of the State of Vermont is entitled, under the full faith and credit clause of the United States Constitution, to be enforced in this State. The judgment is a decree of absolute divorce in favor of the plaintiff and carries with it a personal judgment against the defendant for a lump sum alimony in the amount of $25,000. Appellant challenges the validity of the judgment on the ground that it was obtained without due process.

The case has been in this court before on an appeal from an order denying a motion made by the plaintiff for a summary judgment. In affirming the order of denial we felt obliged to accept the defendant's version of the facts as to all points upon which there was an open question of fact (*Chapman* v. *Chapman,* 284 App. Div. 504, 509). There has since been a trial by a court without a jury and certain findings of fact have been made, and a judgment entered in favor of the plaintiff which determined that the judgment of the County Court of Rutland County, Vermont, was obtained by due process and entitled to full faith and credit in the courts of New York. From that judgment the defendant has appealed.

In order to render this opinion intelligible some factual background must be given, now based upon the findings of the trial court, although a great deal of this does not differ materially from the statement of undisputed facts set forth in our previous opinion.

On February 14, 1950 the respondent herein commenced an action against the appellant in the County Court of Rutland

County, Vermont, for a divorce from bed and board for the limited period of four years. This action was roughly equivalent to what would be known in this State as a separation action. A general appearance on behalf of appellant was entered in this action by a Vermont attorney and an answer interposed on the merits. At a hearing for alimony *pendente lite* appellant appeared personally and was ordered to pay the sum of $100 a month. Apparently he paid but little heed to that order for thereafter a summary judgment was entered against him in Vermont for arrearage in alimony payments. He not only then left the State of Vermont and remained outside of its jurisdiction until after a judgment of divorce was entered against him, but the evidence indicates that he paid no attention whatever to the attorney who represented him in Vermont and failed to answer any of the latter's communications to him. Instead he consulted an attorney in New York State who conducted some long-range negotiations with respondent's counsel in Vermont concerning an adjustment of the marital dispute. Those negotiations proved to be fruitless.

Respondent's Vermont attorney moved the separation action for trial as of November 20, 1951. By telegram on November 17, 1951, followed by a letter, appellant was notified by his attorney in Vermont of the imminence of a prospective trial date. Appellant made no reply to either the telegram or the letter and the trial date was set for December 17, 1951. He testified he received the telegram two or three days after it was sent, at least before Thanksgiving Day of that year, and tried once to get in touch with his Vermont attorney by telephone. When he failed to reach him on that one occasion he made no further effort either by telephone or letter to communicate with him. From this course of conduct the conclusion is almost inescapable that appellant was content to let the separation action in Vermont go by default, but in any event if judgment had thereafter been entered by default, on the complaint as originally framed he could not have successfully argued lack of due process for he had entered a general appearance and had every opportunity to defend.

However respondent did not proceed on her original complaint. She moved to amend her complaint to substitute for a separation action a cause of action for absolute divorce. We are told, and the proof taken at trial term so indicates, that in Vermont the grounds for a separation and a divorce are the same, although they apparently constitute different statutory cause of action (Vermont Statutes [1947, Rev.], §§ 3205, 3218). In any event respondent's motion to amend was made on

December 13, 1951 and returnable at a term of the Rutland County Court on December 17, 1951. There is evidence from which the trial court in this case on appeal could and did find that appellant's attorney had notice of that motion. On December 15, 1951 appellant's Vermont attorney filed a motion to withdraw from the case, and this motion was also returnable on December 17, 1951. The Rutland County Court was presided over then by a Judge of the Vermont Superior Court, and, according to his testimony, he held a conference with both respondent's and appellant's attorneys in chambers before the motions were decided in open court. He told the attorneys he would grant both motions in the following order — the motion of respondent to amend her complaint and then the motion of appellant's attorney for leave to withdraw. He also testified that the appellant's attorney was in the courtroom when the motions were decided in open court; and that he adopted the procedure aforesaid so that appellant would be represented when the motion to amend was made.

In some particulars his testimony was contradicted. Appellant's Vermont attorney testified that he was never present at any conference with the Superior Court Judge at which the proposed amendment to respondent's complaint was discussed; and he also denied that he was present in the courtroom when the motions were granted. An excerpt from the Rutland County Court docket, transcribed from the minutes of a court stenographer, indicates that the motion by appellant's Vermont attorney to withdraw from the case was granted first, and the motion to amend the complaint granted thereafter. However the trial court accepted the testimony of the former Superior Court Judge, bolstered as it was by the testimony of respondent's Vermont attorney and an Assistant Judge of the County Court, and made his findings accordingly: — that appellant's Vermont attorney had notice of the motion to amend prior to the time he was permitted to withdraw from the case, and was present when the motion to amend was granted.

We are not disposed to interfere with the estimate of the trial court as to the weight of evidence on this issue. The testimony to support his findings was substantial; there was nothing about it inherently incredible, and his judgment as to credibility and the weight to be attached to it is entitled to acceptance. Of course it may be argued that even the order of the events as found by the trial court did not necessarily satisfy the requirements of due process on the basis that appellant was without adequate representation. The court, in the person of the Superior Court Judge and on his own admission had already

indicated that he would grant both motions, and it would be somewhat naive to expect appellant's attorney, whose client had utterly failed to co-operate with him, to assert any real opposition to the motion to amend. It might be argued further that due process is a matter of substance, and not a matter of form to be satisfied by a token representation. In opposition to this however it might be asserted that courts cannot function except through technical requirements and their observance. But in any event these matters were for the court of Vermont to consider. It would be inappropriate for us to pass judgment on them, so far as the decree of divorce alone is concerned, in view of the defendant's general appearance in the original action for separation and the finding that he was represented at the time the amendment to that cause of action was made. Since plaintiff was a resident of Vermont, and the parties were last domiciled in that State, the courts there had power to grant a valid decree of separation or divorce under the facts stated. This conclusion of course rests upon the familiar principle that the courts of Vermont could determine the marital status of one of the citizens of that State even upon constructive service (*Williams* v. *North Carolina*, 317 U. S. 287).

But we cannot dispose of so easily, as a matter of full faith and credit, the issue as to the validity of the personal judgment against defendant for lump sum alimony. We have heretofore held that the Vermont courts "had no jurisdiction over the defendant personally upon the new cause of action by virtue of his original appearance and they could acquire personal jurisdiction over him only if service were made upon him personally within the State of Vermont or if a new appearance were made by him with respect to the new cause of action. In the absence of such service or appearance, the Vermont courts could render only a judgment in rem against the defendant; they could not enter a valid personal judgment for alimony." (*Chapman* v. *Chapman, supra,* p. 513.) We do not retreat from this position or abandon the principle embodied therein (*Matthews* v. *Matthews,* 247 N. Y. 32; 2 Carmody on New York Practice, § 735; Restatement, Judgments, § 5, comment g). However, additional facts revealed in the record before us lead to the belief that the principle thus reaffirmed is not a bar to the affirmance of the judgment here under the full faith and credit clause of the Federal Constitution.

On the same day the motions were granted proof was taken and respondent was granted an absolute divorce, and awarded the lump sum of $25,000 in lieu of alimony. In the meantime appellant had become domiciled in the State of Florida and on

September 14, 1951 he commenced a divorce action in Florida against respondent by constructive service. She was not served with any process within the State of Florida and did not appear in the action. Appellant obtained a judgment of divorce in his favor in Florida on November 23, 1951, but he did not amend his answer in the Vermont separation action to set up the Florida divorce nor did he take any other steps to bring it to the attention of the Vermont court until more than a year later. In November, 1953 appellant petitioned the Supreme Court of Vermont for a new trial of the Vermont case, chiefly on the ground that the Florida divorce decree barred the granting of the Vermont judgment. This petition was dismissed without prejudice for lack of proper service upon respondent. In February, 1954 appellant again petitioned the Supreme Court of Vermont for a new trial upon a petition identical in all respects with his previous petition which had been denied for lack of proper service. The Supreme Court of Vermont denied his application for a new trial on the ground that he had not proceeded with due diligence. In our previous decision we said (284 App. Div. 504, 516) : " the invalidity of the Vermont decree on due process grounds was not raised upon the motion for a new trial and was not passed upon by the Vermont court." From our examination of the record before us now we are inclined to the view that perhaps this statement quoted was too broad in scope. While the ground assigned in appellant's petition for a new trial was based in chief on the existence of the Florida divorce he did allege that after the commencement of proceedings in the Rutland County Court on December 17, 1951 he was not represented by counsel. He also alleged that respondent was permitted by the Rutland County Court to amend her cause of action for separation and substitute therefor an action for an absolute divorce. That the Supreme Court of Vermont was cognizant of the procedure adopted may be seen by its opinion (*Chapman* v. *Chapman*, 118 Vt. 166). While it is true that the Supreme Court of Vermont neither mentioned nor expressly passed on any issue of due process nevertheless we must assume that since it in effect affirmed the judgment by refusing to grant a new trial it found the procedure followed by the court below to be in accord with due process. Certainly there was implicit in its decision tacit recognition that the amendment to the prayer for relief in the separation action was duly and regularly made, and in full conformity with the statutory laws and practice in Vermont, and that the judgment of divorce and for lump sum alimony was in accordance therewith. For this reason we feel impelled to apply

the doctrine of *res judicata* which embraces not only all matters litigated but also all relevant issues which could have been raised and decided, including the issue of jurisdiction (*Angel v. Bullington,* 330 U. S. 183; *Heiser v. Woodruff,* 327 U. S. 726; *Sherrer v. Sherrer,* 334 U. S. 343; *Connolly v. Bell,* 286 App. Div. 220, mod. 309 N. Y. 581; *Pray v. Hegeman,* 98 N. Y. 351). In view of what we attribute to the decision by the highest court of Vermont appellant's proper approach to the issue of due process was by appeal to the Supreme Court of the United States rather than by a collateral attack on the divorce decree of Vermont in the courts of this State.

If there is some doubt that the doctrine of *res judicata* is applicable the same result may be arrived at upon the theory of waiver. When the defendant thereafter moved in the courts of Vermont to have the judgment of divorce set aside, and for permission to set up as a defense his judgment of divorce obtained in the State of Florida as a bar to plaintiff's cause of action, he waived any issue of personal jurisdiction. His appearance therein was not a special appearance, designed only to contest the jurisdiction of the courts of Vermont by reason of a change in the original cause of action pleaded against him, but quite to the contrary was for affirmative relief to further contest the action on another ground. An appearance must be either general or special. If general it constitutes a waiver of any issue of jurisdiction (2 Carmody on New York Practice, § 749 and cases therein cited).

Both the doctrine of *res judicata* and waiver are based in principle on estoppel, and upon the theory of either or both plaintiff is now estopped from denying validity to the Vermont personal judgment so far as full faith and credit in this State is concerned.

The judgment should be affirmed, with costs.

HALPERN, J. (concurring in result). I would affirm the judgment upon the ground that the jurisdictional infirmities to which the judgment seemed subject upon the basis of the affidavits and exhibits submitted upon the motion for summary judgment were cleared up by the proof upon the trial. It appeared from the proof not only that the defendant was represented by counsel at the time the motion to amend the complaint was granted but also that the defendant's counsel was actually present in court and offered no opposition to the amendment, either on constitutional grounds or on any other grounds. In the light of this and other circumstances established by the proof, the defendant must be deemed to have appeared with respect to the new cause

of action and it must be held that he had adequate notice and an opportunity to be heard with respect thereto.

If the apparent jurisdictional defects had not been cleared up by the proof and if it had still appeared that the money judgment was void at the time of its entry, I do not believe that the defendant's subsequent appearance upon the motion for a new trial would have retroactively validated the judgment. The effect of the defendant's appearance upon the motion after the entry of judgment is to be determined by Vermont law, subject to constitutional limitations (*York* v. *Texas,* 137 U. S. 15; *Adam* v. *Saenger,* 303 U. S. 59; *Johnson* v. *Muelberger,* 340 U. S. 581). Our attention has not been directed to any Vermont decision adopting the view that a general appearance after judgment waives jurisdictional defects in the judgment or retroactively validates a void judgment, although there is authority in some States to that effect (3 Am. Jur., Appearances, § 22; Ann. Cases 1914 C, p. 692). The only relevant Vermont decision which I have been able to find tends to support the opposite view, namely, that the effect of the appearance is prospective only, that is, it may be used as the basis of jurisdiction for a new determination, if the default is opened, but it does not waive jurisdictional defects in the prior proceedings (*Bioni* v. *Haselton,* 99 Vt. 453). This view, which is best expounded in *McGuinness* v. *McGuinness* (72 N. J. Eq. 381), prevails in many jurisdictions (6 C. J. S., Appearances, § 20). It also seems to be the law of New York (*Robinson* v. *Robinson,* 123 Misc. 80, affd. 209 App. Div. 896; *Weiss* v. *Weiss,* 227 App. Div. 757; *Forbell* v. *Forbell,* 274 App. Div. 807; *Irving Trust Co.* v. *Seltzer,* 265 App. Div. 696, 701; semble contra, *Revona Realty Corp.* v. *Wasserman,* 4 A D 2d 444, but see p. 450).

Neither do I believe that the decision of the court denying the motion for a new trial " for lack of diligence " was a binding adjudication of the jurisdictional validity of the judgment. All that was decided on that motion was that the defendant was not entitled to have the case reopened as a matter of discretion for the purpose of enabling the defendant to interpose the Florida divorce as a defense on the merits. The defendant's moving papers referred to the fact that the complaint had been amended from one for separation to one for absolute divorce and to the fact that the defendant had not been represented by counsel after the withdrawal of his former counsel but, when read in context, it is apparent that these references to the history of the litigation were merely intended to explain the failure of the defendant to raise the Florida divorce upon the trial and thus to meet the charge of lack of diligence, as bearing upon the

exercise of the court's discretion, and were not intended to tender the issue of want of jurisdiction as a ground for vacating the judgment as a matter of constitutional right. In his opinion for the court, Presiding Justice FOSTER recognizes that the Supreme Court of Vermont did not expressly pass on any issue of due process but he invokes the rule that *res judicata* embraces not only the issues actually raised and litigated but also all issues which could have been raised. This rule, however, is applicable only to a final judgment or final order and not to an intermediate order or to an order upon a motion to open a default. (*Sand* v. *Sand,* 116 Vt. 70.) "But it is shown * * * in all the cases that this doctrine only applies where there has been a final judgment on the merits of the case. Such is not the situation here * * *. The ruling of the court made in December merely settled in favor of the plaintiff that the ground then presented by the defendant for the dismissal of the petition was not valid and did not in any way affect" any other ground (*Sand* v. *Sand, supra,* p. 71). The same view prevails in New York (*Everett* v. *Everett,* 180 N. Y. 452, affd. 215 U. S. 203; *Bannon* v. *Bannon,* 270 N. Y. 484).

Therefore, I am of the opinion that neither the doctrine of waiver nor the principle of *res judicata* barred the raising of jurisdictional objections in this case.

BERGAN, COON and GIBSON, JJ., concur with FOSTER, P. J.; HALPERN, J., concurs in the result, in a separate memorandum.

Judgment affirmed, with costs.