[No. 240-2.    Division Two.    May 12, 1971.]

ERNEST F. RIPPE *et al., Appellants,* v. RICHARD DORAN, *Respondent and Cross-appellant.*

*Charles E. Gallup* (of *Gallup & Duggan*), for appellants.

*Duane Lansverk* (of *Landerholm, Memovich, Lansverk, Whitesides, Marsh, Morse & Wilkinson*), for respondent and cross-appellant.

PETRIE, C.J.—Plaintiffs' appeal presents a problem in contract interpretation as to the geographic limitations upon a covenant not to compete. Defendant's cross-appeal challenges the jurisdiction of a court, after confession of judgment, to award damages for reasonable rental value of the property detained after notice of forfeiture had been given, in a forfeiture action which did not seek such damages.

In May, 1964, plaintiffs Rippe, as lessees of premises at 1505 Broadway, Vancouver, Washington, and as owners of a car wash business located on those premises, sublet the premises and sold the business, including building, equipment and goodwill under a conditional sales contract to defendant, Doran. The contract contained a forfeiture clause entitling Rippe to possession of the property in event of Doran's default, and also a noncompetition clause, constituting a separate and severable covenant, as follows:

> The Sellers agree not to enter into any form of competitive business *in the City of Vancouver, Washington* for a period of five years from this date, and the Purchaser's agreed damages for breach of this covenant is $10,000.00.

(Italics ours.)

During negotiations, the parties had not discussed the geographical limits of the covenant not to compete, but Rippe had advised Doran that customers had come from throughout Clark County and beyond. The noncompetition clause was inserted in the contract at Doran's request, but the specific language appears to be that of the attorney, selected by a real estate broker, who drafted the documents.

In March, 1966, Rippe opened a coin-operated automatic car wash business just north of 78th Street in Hazel Dell, which is an unincorporated area immediately adjacent to and north of the city limits of Vancouver, but well within the Vancouver metropolitan area. Rippe's business was competitive with the business he had previously sold to Doran.

In August, 1967, Rippe filed a complaint for forfeiture of conditional sales contract, alleging that Doran had defaulted on the contract. Doran filed an answer, denying the default, and a cross complaint, alleging Rippe had breached the noncompetition covenant of the contract and seeking the damages agreed to in the contract.

Negotiations and a pretrial conference having failed to produce any substantial result, the matter was tried to the court on July 1, 1968. At the commencement of trial, Doran, through counsel, declared that he had no objection to entry of an order of forfeiture; trial proceeded on Doran's cross complaint. At the close of testimony and prior to any ruling of the court, Doran suggested to the court that a matter, mentioned in conference but upon which no testimony had been taken, should be placed on the record—disposition of gasoline pumps and storage tank, concerning which Doran had a contractual obligation to another party, but which had not been a subject in either the conditional sales contract or the sublease. Rippe, on the other hand, took the position that he wanted possession of the premises, business and equipment as is, and that the matter of disposition of the pumps and tank could not be litigated in this action; and further declared that he could see complications and side issues which might take further evidence to decide.

After listening to argument of counsel, the court made an oral ruling that (1) directed entry of the decree of forfeiture against Doran together with attorney fees; (2) declared Rippe had breached the noncompetition covenant and awarded damages to Doran in the amount agreed to in the contract; and (3) directed Rippe to inform the court

and Doran in 30 days as to his desires regarding disposition of the pumps and tank, *i.e.*, whether or not he desired them removed from the premises, to the end that Doran's contractual rights and responsibilities with the other contracting party might not be jeopardized 'as a consequence of repossession of the premises by Rippe.

The record does not reflect that Rippe advised the court of any desires regarding the pumps and tank. Instead, on July 8, 1968, Rippe filed simultaneously a motion and affidavit for writ of assistance and also a motion for reconsideration or for new trial. The affidavit attached to Rippe's request for a writ of assistance declares (1) that he entered the premises at 1505 Broadway on July 5, 1968, to inspect and inventory the property subject to the conditional sales contract which had been declared forfeit by the court; (2) that he had been threatened with violent ejectment from the premises; (3) that Doran continues to use and operate the equipment and to take the profits therefrom; (4) that property subject to the contract in the approximate value of $2,000 could not be found on the premises; and (5) that Rippe has had to pay the rental on the basic lease for the month of June, 1968, and has been called upon to pay the July rental as well. The writ, noting the matter alleged by Rippe's affidavit, was summarily issued by the court, and the sheriff of Clark County was authorized and directed to restore possession of the premises to Rippe, using force if necessary.

Rippe's motion for reconsideration or for new trial was subsequently heard by the court, apparently simultaneously with a hearing on Doran's proposed findings, conclusions and decree; and the court entered an order on October 4, 1968, noting preliminarily the prior proceedings and their limited effect at total disposition of the matter, noting also that it was apparent there were still areas of disagreement between the parties, that additional testimony should be taken, further observing that if the matter should again be heard on a piecemeal basis there would undoubtedly still be areas of disagreement, and finally ordering "that

this matter shall be set for trial on a date certain, and as soon as possible under the circumstances."

There never was any new trial, nor was any additional testimony taken. Instead, another series of conferences was conducted. It is regrettable that the "areas of disagreement" were never specified in any detail. However, the court did issue a memorandum opinion on June 16, 1969. In that opinion, the court (1) reasserted its prior ruling on the forfeiture and attorney fees; (2) reasserted its prior ruling on Rippe's breach of the covenant not to compete and the assessment of damages in favor of Doran in the amount specified in the contract; (3) noted that in the intervening time period, the gas pumps had reverted to the owner of premises and therefore were no longer a matter of dispute between Rippe and Doran; and (4) announced that the court had been given latitude to determine reasonable rental value of the property detained by Doran after Rippe had given notice of forfeiture. Having exercised the latitude extended, the court determined that the reasonable rental value of the property amounted to $750 (subsequently reduced to $500 after still another motion) per month for each of the 11 months Doran had retained the property.

After disposing of several more motions, the trial court entered findings, conclusions and judgment on January 8, 1970. These appeals followed.

■ Basically, Rippe contends the court erred in finding that the competing business in Hazel Dell was located within the "City of Vancouver", Washington as that term is used in the noncompetition agreement. The sole question then is whether or not the court properly construed that term.[1] While the "City of Vancouver" is an apparently clear term, it can reasonably be given either of two meanings: First, it may be read restrictively to mean the city limits as legally established; or second, it may be read more broadly to mean the metropolitan area of Vancouver. The

---

[1]No question has been raised as to the reasonableness of the terms of the restrictive covenant. *See Wood v. May,* 73 Wn.2d 307, 438 P.2d 587 (1968).

intention of the parties was not discoverable either on the face of the contract, or through extrinsic evidence for it was apparent that they each had intended different limitations by this term. The trial court then held the term would be construed to include the metropolitan area of Vancouver based on its finding that Doran believed this was its meaning and that he had a right to so believe in view of the Rippes' statements on the broad customer area. Furthermore, the court determined that a reasonable interpretation of the contract prohibited opening a competing business just outside the city limits for the purposes of enticing former customers within such city limits. 6A A. Corbin, Contracts § 1386 (1962). Its memorandum opinion clearly demonstrates that it considered Rippe's new business to be such a competing business. Totally unchallenged is the trial court's finding that the new business was competitive. This finding and the record herein support the court's interpretation of the term "City of Vancouver." Accordingly, that portion of the judgment dealing with the interpretation of the restrictive covenant is affirmed.

The issue raised by Doran's cross-appeal is whether or not the trial court had jurisdiction to make an award of reasonable rental value to the Rippes. This point was not in issue at trial; it arose some time after the close of testimony which had been heard by the court on July 1, 1968. Although the posttrial "areas of disagreement" have not been preserved in the record, we do glean from the record which has been preserved that immediately following the close of testimony on July 1, 1968, Doran sought relief from the court on a matter ancillary to his confession of judgment as to the forfeiture. It is quite apparent that he did not voluntarily vacate the premises, pursuant to such confession. Furthermore, the court concluded by its order of October 4, 1968 that further piecemeal efforts would be fruitless and granted Rippe's motion for new trial. It does not appear that the new trial was limited in any fashion, but both parties and the court, by subsequent actions, abandoned any pursuit of an entire new trial; instead the parties gave

the court some degree of latitude, the full extent of which is unrecorded, to decide the issues which had been brought up by the pleadings or through the several conferences which the court had conducted.

In its memorandum opinion of June 16, 1969, the court stated that it had been given latitude to determine reasonable rental value of the property detained by Doran. Doran concedes that this is an accurate statement but argues that he had continually objected to the court's action on the ground that it was without jurisdiction to make such an award, that the judgment was taken against him by default, and therefore, the court could not make an award in excess of the prayer in the complaint. While this may not be the classic default judgment case, it possesses the essential characteristics of a default judgment and we shall treat it accordingly. The applicable rules are (1) a default judgment cannot exceed the demand of the complaint, *Stablein v. Stablein,* 59 Wn.2d 465, 368 P.2d 174 (1962); (2) a judgment which exceeds or contains relief not sought in the complaint and which is entered without notice to the defendants of such a change in theories or remedies sought, is void. *Sceva Steel Bldgs., Inc. v. Weitz,* 66 Wn.2d 260, 401 P.2d 980 (1965); Restatement, Judgments § 8(c) (1942).

The obvious purpose of, and underlying reason for, these rules regarding default judgments are to assure the defendant, who consciously allows a default judgment to be taken against him, that he may rest secure in the knowledge that the judgment will not be entered in excess of the complaint. *Sceva Steel Bldgs., Inc. v. Weitz, supra.* This effectively does no more than guarantee the defendant a right to notice and a reasonable opportunity to be heard—in a word —due process.

When the pertinent rules regarding default judgments are applied to the facts in this case, we can only conclude that the rules have been observed and the defendant Doran has been treated fairly. The key to this issue is that Doran was notified of the change in relief sought after he had

sought relief ancillary to the forfeiture, and was given the opportunity to defend against it. Indeed, he was successful in reducing the monthly amount of this rental from $750 to $500. It was only thereafter that final judgment was entered against him. We believe that the court has the power to enter a default judgment in excess of the relief sought in the complaint when the defendant has been notified of the change and has been given a fair opportunity to defend against the claim on which the judgment is based. *See Sceva Steel Bldgs., Inc. v. Weitz, supra*; Restatement, Judgments § 8(c) (1942). Such authority was properly exercised in the case at bar.

Judgment affirmed.

ARMSTRONG, J., concurs.

PEARSON, J. (dissenting)—I must dissent from the majority opinion, for the following reasons.

(1) Under the guise of interpretation, the majority has broadened a noncompetition covenant beyond its specific terms, contrary to the express public policy of this state. *See Wood v. May*, 73 Wn.2d 307, 438 P.2d 587 (1968). There is nothing ambiguous in the covenant. The "City of Vancouver" is a well-defined geographical area. For the majority to say that 78th Street in Hazel Dell (some 2 miles north of the Vancouver city limits) is "well within the Vancouver metropolitan area" and consequently conclude that it is within the "City of Vancouver" is to ignore plain geography.

Economics as well as geography indicates that this covenant not to compete should be construed strictly. At least since the passage of the Sherman Act, the policy of the law has favored competition on the theory that under the stimulus of the open market place, producers of goods and services will produce more products at a lower price. Some justification has been advanced for restrictions such as the one at issue here. They allow, it is thought, ventures which would be thought to carry too much risk of failure without protections like covenants not to compete. However, these private protections must be weighed against the public in-

terest in lower prices and better services. Thus it is that courts write of reasonable restrictions. Restrictions on limited geographic areas and for limited amounts of time may be tolerable if they foster new business enterprise and remove some risk from ventures. However, such restrictions must be carefully weighed and strictly construed if the more basic economic policy of protection to the larger consumer group is to be advanced.

(2) The majority say that "Rippe's business was competitive with the business he had previously sold to Doran." This is an incorrect statement, not supported by any substantial evidence. In fact, the trial court excluded testimony which was offered to show the competition factor on the theory that such testimony was only relevant to the damage issue, which was precluded from proof requirements by virtue of the $10,000 penalty clause. It would be my view that such testimony was not only relevant, but absolutely essential to show a breach of the covenant where appellant located his business outside the city of Vancouver. Application of the theory discussed in 6A A. Corbin, Contracts § 1386 (1962), and cited in the majority opinion, is predicated upon damages flowing from the competing business, which is located just beyond the territorial limits of the noncompetition covenant. Where actual damages are not shown, there is no proper basis for applying the Corbin theory.

It is my view that the trial court was in error in sustaining appellant's objection to the evidence offered by respondent, purportedly intending to show that a car wash near 78th Street in Hazel Dell would compete with a car wash in downtown Vancouver. If such evidence was available, it should have been allowed in order to see if recovery of damages should be allowed as per 6A A. Corbin, Contracts § 1386 (1962). It is somewhat difficult to perceive that two car washes located some 3 miles apart actually do compete for business with one another. My skepticism, however, should not preclude respondent the opportunity to show such competition, if he can.

I think a new trial would also enable the trial court to take testimony in support of its decision to grant a reasonable rental value to appellant, who was precluded from occupancy of the premises for some 11 months by a defaulting contract purchaser. The record in its present state does not support the award.