Joseph F. Gagliardi, J.
By order to show cause dated May 1, 1975, plaintiff obtained a temporary restraining order staying execution of a Texas judgment, which order similarly enjoined plaintiff from transferring any assets without adequate consideration. The order further provided that service was to be made upon defendant’s New York counsel by certified or registered mail, return receipt requested. Issues are raised regarding the full faith and credit clause of the Federal Constitution (US Const, art IV, § 1).
Plaintiff is a New York resident and the principal behind several corporations that bear his name (see Overmyer v Frick Co., 405 US 174). The underlying facts herein emanate from plaintiff’s financial difficulties throughout his corporate empire. Annexed to the order to show cause is a summons and complaint, and several exhibits. An amended complaint containing three causes of action, was served on defense counsel on May 7, 1975. The amended complaint is not substantially different from the original as the thrust of each pleading is for a declaratory judgment and permanent injunction. The amended complaint alleges that defendant is a Connecticut corporation that has retained a New York law firm to enforce and execute upon the Texas judgment; that said judgment was filed and docketed with the Westchester County Clerk; and execution directed to the Sheriff in April 1975, which is the first time plaintiff received notice of the judgment (cf. CPLR 5403; Texas Rules of Civil Procedure 306d). The essential factual background pertaining to the judgment, as alleged, is as follows: On July 1,1973, defendant sued plaintiff and one of *697 his corporations[1] for moneys due under a certain lease agreement on real property located in Texas;[2] plaintiff and the corporation were defended by house counsel which vigorously engaged in pretrial matters; on October 10, 1973, the corporation’s right to do business in Texas was revoked; on October 24, 1973, the corporation deposited a check with the Texas court in the sum of $90,810.47 representing partial payment of corporate debts created prior to October 10, 1973; the check was dishonored; in November 1973 the corporation filed a petition in bankruptcy; on November 15, 1973, house counsel, on notice to all parties, obtained an order from the Texas court permitting them to withdraw because virtually all attorneys associated with this plaintiff’s legal department were being let go;[3] in December 1973, a receiver was appointed and undertook the defense of actions against the corporations; on February 5, 1974, defendant filed a "Trial Amendment” in the Texas action requesting judgment against plaintiff personally pursuant to article 12.14 of the Texas Tax Code; no notice of said amendment was sent to the receiver and, although there is an affidavit of service annexed thereto by defendant’s Texas counsel that said amendment was sent by certified mail, return receipt requested, to plaintiff’s New York counsel and to plaintiff, both plaintiff and his former counsel aver that they have no recollection regarding receipt of said amendment; and final judgment was entered on March 15, 1974.
The "Trial Amendment” recites the appropriate time sequence of the check issuance and subsequent revocation of the corporation’s right to do business in Texas; that the check was issued for a prerevocation debt and was approved and consented to by plaintiff herein; and requests a judgment against said plaintiff pursuant to article 12.14 of the Texas Tax Code.
The Texas judgment in pertinent part states:
*698 "On February 18, 1974, came on for trial the above-entitled and numbered cause, wherein Eliot Realty, Inc., is Plaintiff, and D. H. Overmyer Company, Inc., a Texas corporation, D. H. Overmyer Company, Inc., an Ohio corporation, Overmyer Distribution Services, Inc., and D. H. Overmyer, an individual, are Defendants. Eliot Realty, Inc., appeared through its corporate representatives and its attorney of record and announced ready for trial. Each of the defendants, having been duly served with process having entered a general appearance herein, and having been duly notified of the trial date in the manner and for the length of time required by law, failed to appear.
"Whereupon, Plaintiff waived its right to trial by jury and all matters of fact and of law were submitted to the Court. The Court, having examined the pleadings and records herein, determined that the same are in due form and contain all of the allegations and information required by law, and determined that this Court has jurisdiction over the subject matter and over all parties and proceeded to try said cause. The Court, having read the pleadings and having heard the testimony of the witnesses and the documentary evidence and the arguments of counsel, and being fully advised in the premises, is of the opinion and finds that the law and the facts are with the Plaintiff, Eliot Realty, Inc., and enters judgment against the Defendants in accordance with the findings and rulings herein set out.”
The judgment consists of nine pages and finding number 3 states:[4]
"That the Defendant, D. H. Overmyer Company, Inc., a Texas corporation, on October 24, 1973, tendered to this Court its draft in the sum of $90,810.47, that said draft represented partial payment of the damages due Plaintiff under the contract of lease described above, that said Defendant wholly defaulted in the payment of said draft and became indebted to Plaintiff for the principal sum thereof in the amount of $90,810.47, that the Defendant D. H. Overmyer, an individual, was at the time of the creation of said indebtedness the Chairman and Chief Executive Officer of D. H. Overmyer Company, Inc., a Texas corporation, that the right of said corporation to do business in this State was duly and lawfully *699 forfeited by the Comptroller of Public Accounts of this State on September 10, 1973, in accordance with Article 12.14, V.A.T.S., Tax.-Gen., and the Defendant D. H. Overmyer, an individual, having known of the creation of such indebtedness and having approved and consented thereto, became jointly and severally liable with the Defendant D. H. Overmyer Company, Inc., a Texas corporation, to Eliot Realty, Inc., in the sum of $90,810.47 of the $95,196.88 indebtedness”.
The first ordering paragraph directed judgment against two Overmyer corporations in the sum of $95,196.88 and against plaintiff herein personally in the sum of $90,810.47.
Subsequently, a reorganization plan was considered by the referee in bankruptcy and the Overmyer creditors, including defendant herein. The plan is still viable and would exonerate plaintiff from all individual liability but does not contemplate the instant judgment because defendant did not notify the referee in time for said judgment to be included. The Texas judgment was docketed in this court by New York counsel on January 24, 1975 (Eliot Realty v Overmyer Co., S.Ct. West. Cty., Index No. 1187/75). Execution was subsequently directed to the Sheriff but it appears that no levy has been made. The County Clerk’s file also contains a letter and affidavit from New York counsel for defendant. In the margin of the affidavit is written the following "1/7/75 Approved for filing pursuant to Section 5402 CPLR” and is signed by a Senior Assistant County Attorney.
The first cause of action prays for a declaration that the Texas judgment is a nullity on the ground that defendant obtained the judgment by trick and design in improperly filing the "Trial Amendment” and obtaining judgment at a time when defendant was without legal representation. The brief amplifies this claim and asserts that defendant’s action constituted a fraud on the court. The complaint further states that the judgment is void under Texas law. The second cause of action alleges that the Texas judgment is a penal judgment, not entitled to full faith and credit in this State. The third cause of action prays for a permanent injunction restraining enforcement.
The order to show cause contains a request for a preliminary injunction. Defendant, who has not answered, has also moved for dismissal for lack of jurisdiction in rem and in personam (CPLR 3211, subd [a], pars 2, 8), or, alternatively, *700 for a bond in the amount of $100,000. Said motion shall be treated as a cross motion.
Defendant, through its New York counsel, contends that it is a foreign corporation, not licensed to do business in this State and does no business here. Plaintiff urges that the lease agreement, which is the predicate for the Texas judgment, was consummated in New York. Plaintiff has submitted a personal affidavit stating that all negotiations relating to the lease and its execution "upon information and belief, took place in New York”. Plaintiff further states that defendant sent representatives here to collect rent due on the Texas premises. Plaintiff and his former chief counsel also aver that defendant has sent representatives here to participate in the reorganization arrangements. Defense counsel’s bald assertion of no forum-related activity is merely conclusory and not entitled to any weight. Furthermore, it is clear that defendant engaged in purposeful activity in this State by seeking enforcement of the Texas judgment and the court holds such activity to be transaction of business here, which supports acquisition of in personam jurisdiction (CPLR 302, subd [a], par l).[5]
Other than the reference to CPLR 3211 (subd [a], par 2) [subject matter jurisdiction] in its moving papers, defendant does not mention the point and since the res (assets) are within this jurisdiction, the issue, if any, is without merit.
Defendant also urges that the method of service herein was improper. The short answer is that another Justice of this court authorized the service in question and I, a Justice of coordinate jurisdiction, cannot review that order (CPLR 2221). Additionally, defendant was subsequently personally served in Texas on the return date of this motion, which service is proper (CPLR 308, 311, 313)5 [6]*8 and cured any defect herein ab *701 initio. Defense counsel, of course, had previously been served and argued the question of jurisdiction before the court. Due process requires notice and an opportunity to be heard and defendant was deprived of neither. Furthermore, the rationale of Jay’s Stores v Lewis Shops (15 NY2d 141) coupled with CPLR 303 also sustains the method of service used herein. In Jay’s Stores (supra) the defendant corporation surrendered its authority to do business in this State in 1956. A New York statute (former General Corporation Law, § 216, now Business Corporation Law, § 1310) provided that the Secretary of State remained as agent for service of process on any "liability or obligation incurred within the State of New York” prior to surrender of authority to do business. In 1953, defendant had executed in New York a contract which guaranteed lease payments on property in Massachusetts. Plaintiff obtained a money judgment in that State upon the contract and in 1963 sued upon said judgment in New York. Service here had been made upon the Secretary of State and defendant moved for summary judgment for lack of jurisdiction. The Court of Appeals in reversing the grant of summary judgment held service to be proper since for jurisdictional purposes the predicate for the judgment had not merged therein but continued to be a "liability or obligation” incurred in this State. A fortiori, the predicate herein, execution of a contract in New York, has not merged in the judgment and if a statute makes defense counsel an agent for process, service on him is proper.
CPLR 303 provides in pertinent part: "The commencement of an action in the state by a person not subject to personal jurisdiction is a designation by him of his attorney appearing in the action * * * as agent * * * for service of a summons pursuant to section 308, in any separate action * * * if such separate action would have been permitted as a counterclaim”. By statutory definition "action” includes a "special proceeding” (CPLR 105, subd [b]). The within judgment was filed in accordance with our "Uniform Enforcement of Foreign Judgments Act” (CPLR art 54) which was enacted in 1970 (L 1970, ch 982) simultaneously with the "Uniform Foreign Country Money Judgments Recognition Acts” (CPLR art 53, L 1970, ch 981). Both of the aforesaid acts are loosely based upon the American Law Institute’s 1948 and 1964 versions of the Uniform Enforcement of Foreign Judgments Act (9a ULA 475, 488), which have received scant judicial attention (Ann 72 ALR 2d 1255, Foreign Judgment-Uniform Act). Prior to 1970, *702 judgment creditors on foreign judgments (except Federal judgments: CPLR 5018, subd [b]) had to sue upon such judgments in this State by commencement of an action or by service of a summons and motion for summary judgment (9 Carmody-Wait 2d, N.Y. Practice, Enforcement of Money Judgments, § 64:8). One purpose of the new legislation was to obviate the bringing of an action (Thirteenth Annual Report of N.Y. Judicial Conference [1968], pp 248, 262), although the former procedures remain viable (CPLR 5406). Nonetheless, some form of proceeding under CPLR article 54 is contemplated[7] since an index number must be purchased as in any other action (CPLR 5405), notice of the filing given (CPLR 5403) which is akin to service of process, a stay may be obtained by showing cause (CPLR 5404, subd [b]) and the foreign judgment "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the supreme court of this state” (CPLR 5402, subd [b]). The grounds for stay of enforcement herein could have been asserted under CPLR article 54 rather than by plenary suit; but, in any event, the grounds alleged could be construed as a counterclaim within the meaning of CPLR 303, since a counterclaim is merely the assertion of a cause of action (CPLR 3019, subd [a]), which in this case relates to the judgment sued upon and would, as a matter of pleading, be a defense under CPLR article 54. Hence, the court concludes that counsel was an agent for service under CPLR 303 (semble contra, Banco do Brasil v Madison S.S. Corp., 61 Misc 2d 1028) and it was not necessary, as the other Justice determined, to attempt to effect personal service on defendant (1 Weinstein-Korn-Miller, N.Y. Civ. Prac., par 303.05: McLaughlin, Practice Commentaries, McKinney’s Cons. Laws of N.Y., CPLR 303, Book 7B, pp 157-158), although that was ultimately accomplished.
Plaintiff raises several issues regarding the validity of the Texas judgment and contends that it is penal and not entitled to full faith and credit; the Texas court lacked subject-matter jurisdiction and the judgment was procured by fraud. While these allegations and assertions are not answered by defendant by affidavit, counsel met these arguments orally on the *703 return day of the motion and it is necessary to scrutinize the issues raised.
There exists authority to the effect that penal judgments are not constitutionally entitled to full faith and credit (3 Freeman, Judgments [5th ed], § 1360). The question appears to be an open one in this State as no New York court has yet been properly presented with the issue (23 N.Y. Jur., Foreign Judgments, § 19, pp 598-599). In City of Philadelphia v Cohen (11 NY2d 401, cert den 371 US 934) the Court of Appeals refused enforcement of a tax claim obligation that arose in another State. Subsequently, the Court of Appeals noted that a judgment for unpaid franchise taxes was not entitled to full faith and credit because the rendering jurisdiction failed to acquire in personam jurisdiction and also neglected to substitute the administrator as a party for the deceased defendant (Matter of Einstoss, 26 NY2d 181, 187). While the court in Einstoss appeared to recognize the rule against enforcement of penal judgments (26 NY2d, at p 186), it has recently questioned the reasons and validity of such principle (Banco Frances e Brasileiro, S.A. v Doe, 36 NY2d 592 [but compare dissenting opinion of Wachtler, J.]; see Milwaukee County v White Co., 296 US 268, 279; cf. Wisconsin v Pelican Ins. Co., 127 US 265). Moreover, it is significant that CPLR article 53 specifically excludes from the definition of "foreign country judgments” judgments for penalties and taxes (CPLR 5301, subd [b]), which precludes their filing here and enforcement thereof, while CPLR article 54 is silent thereon and necessarily implies that penal judgments rendered in sister-States are entitled to full faith and credit. Hence, enforcement cannot be denied on the ground that the judgment is penal.[8]
Plaintiff’s next contention, that the Texas court lacked subject-matter jurisdiction is without merit. "Subject-matter *704 jurisdiction is lacking where the court enters a judgment which by the law of its creation, it had no authority to make (Matter of Will of Walker, 136 NY 20)” (Murphy v Itcha Realty Corp., NYLJ, May 21, 1971, p 19, col 6; 1 Freeman, Judgments [5th ed], § 337). At bar, it appears that the Texas judgment which fastened liability upon plaintiff personally under article 12.14 of the Tax Code is contrary to an earlier opinion of a higher court in Texas (Schwab v Schlumberger Well Surveying Corp., 145 Tex 379). In Schwab it was held that, under the predecessor statute, personal liability attaches only for debts contracted after revocation of the franchise; and where the corporation renews a note after revocation for a pre-revocation debt, no personal liability exists. However, the instant judgment is not void for lack of subject-matter jurisdiction. The Texas court clearly had the power to adjudicate responsibility under the statute; rather plaintiff complains about an error of law which is no ground for denying full faith and credit, even if the judgment is erroneous on its face and the pleadings fail to state facts authorizing the relief granted (Matter of Acheson, 28 NY2d 155, 162-164, cert den 404 US 826; Restatement, Judgments, § 106; Restatement, 2d, Conflict of Laws, § 106; Freeman, Judgments [5th ed], vol 3, § 1400; vol 1, § 365, p 762; see Wycough v Bennett, 510 SW 2d 112, 114-115 [Tex]; Heard v State, 146 Tex 139).
Plaintiff’s last contention, that the judgment was procured by fraud, requires analysis. Generally, full faith and credit is accorded sister-State judgments where the rendering court had jurisdiction of the parties and of the subject-matter, even if the judgment is obtained by default, provided there is no fraud or collusion (Williams v North Carolina, 325 US 226; 317 US 287; Atlas Credit Corp. v Ezrine, 25 NY2d 219, 231; Vander v Casperson, 12 NY2d 56; Parker v Hoefer, 2 NY2d 612, 616; Matter of National Sur. Co [Laughlin], 283 NY 68; Acuri v Acuri, 265 NY 358, 361; O’Donoghue v Boies, 159 NY 87, 99; 23 N.Y. Jur., Foreign Judgments, §§ 6, 8-10; Restatement, 2d, Conflict of Laws, §§ 103-111). Collateral attacks on judgments are ordinarily not permitted (Restatement, Judgments, § 47, Comment i) although a nonappearing defendant may litigate jurisdictional issues in the forum State, but once the forum finds that the rendering State had jurisdiction the inquiry ceases (Williams v North Carolina, 317 US 287; Vander v Casperson, supra). Of course, the foreign judgment is only entitled to the same weight here as the rendering State *705 would accord it there and, if the judgment can be impeached there, it can be collaterally attacked here (Johnson v Muelberger, 340 US 581; Lynn v Lynn, 302 NY 193, cert den 342 US 849). Collateral attack on the ground of fraud is a well recognized exception to the general rule and even if direct attack does not lie, equity will intervene to provide a remedy (3 Freeman, Judgments [5th ed], §§ 1401-1403).
At bar, plaintiff does not urge that the Texas court lacked in personam jurisdiction; rather it is urged that Texas would permit a collateral attack there in equity to restrain enforcement because of the court’s erroneous determination and, further, is subject to attack for fraud in procurement. The cases cited by plaintiff in support of the first posit above are distinguishable from the instant facts and this court cannot hold that the judgment is void for an error of law and not entitled to enforcement in Texas (cf. Stevenson v Thomas, 56 SW2d 1095 [Tex]). Nonetheless, it is well settled that a judgment procured through extrinsic fraud is not entitled to full faith and credit (Gray v Richmond Bicycle Co., 167 NY 348; Tamimi v Tamimi, 38 AD2d 197; Fischel v Abrahams, 227 NYS2d 935; Miller Constr. Co. v Berlanti Constr. Co., 197 NYS2d 818; 23 NY Jur, Foreign Judgments, § 16; Ann 55 ALR2d 673, 686-688 Foreign Judgment-Fraud as Defense; cf. CPLR 5015, subd [a], par 3; 5304, subd [b], par 3). The fraud must relate to matters other than issues that could have been litigated and must be a fraud on the court (cf. Matter of Holden, 271 NY 212, 218).
Sister-State judgments are presumed valid and are entitled to prima facie recognition even where fraud in procurement is alleged (Matter of Joseph, 27 NY2d 299; 23 N.Y. Jur., Foreign Judgments, §§ 15, 23). The burden is upon plaintiff to establish his allegations. Here it is claimed that the judgment was obtained by default and a new cause of action was added only after plaintiff’s counsel withdrew, which was a fraud upon the court. As noted earlier, default judgments were accorded full faith and credit (Parker v Hoefer, 2 NY2d 612, supra). However, CPLR 5401 indicates that a judgment obtained "by default in appearance” is not entitled to recognition. The Texas judgment was obtained by default but not by default in appearance since plaintiff did appear through counsel in the action (see Black’s Law Dictionary [4th ed], pp 125-126). An appearance confers jurisdiction and once conferred cannot be withdrawn by the unilateral act of failing to proceéd in the *706 action (Lynde v Lynde, 162 NY 405, 414-415; Matter of Sutera v Sutera, 1 AD2d 356). Nonetheless, it has been held that acts of one party which prevent a real hearing on all issues is equivalent to extrinsic fraud (Tamimi v Tamimi, 38 AD2d 197; see United States v Throckmorton, 98 US 61, 65-66).
Rule 63 of the Texas Rules of Civil Procedure permits a party by "Trial Amendment” to amend his pleadings "by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party” and, further, that any amendment offered within seven days prior to trial requires a court order. The "Trial Amendment” was filed almost four months after the check had been dishonored, two weeks prior to trial and at a time when defendant knew plaintiff lacked legal representation. Upon this record, it must be assumed that plaintiff and his former counsel did not receive notice of said amendment since defendant could easily have submitted evidence of proof of service (cf. Texas Rules of Civil Practice 72).
Under the theory of continuing jurisdiction, pleadings may be amended and judgment awarded thereon provided that the adverse party be given reasonable notice and an opportunity to be heard at every step of the proceeding (Restatement, 2d, Conflict of Laws, § 26, Comment d, pp 116-117, Comment f, p 119; § 25). "Even though the State has jurisdiction over the parties and even though the court is one with competency to render the judgment, a judgment by default is void if it was outside the cause of action stated in the complaint and if the defendant was not given a fair opportunity to defend against the claim on which the judgment was based. Such judgment is subject to collateral attack” (Restatement, Judgments, § 8, Comment c, pp 48-49; § 5, Comment g). The obvious purpose of this rule is to assure a defendant who consciously allows judgment to be taken against him, that he may rest secure in the knowledge that the award will not exceed the issues in the pleadings of which he had knowledge and an opportunity to be heard (Ripp v Doran, 486 P 2d 107 [4 Wash App 952]).
The factual pattern herein is strikingly similar to that in Chapman v Chapman (284 App Div 504, mot for lv to app den 284 App Div 857, mot to amend decision 285 App Div 991). In Chapman plaintiff sued for a separation in Vermont where the parties had resided. Defendant appeared by Vermont counsel and served an answer; and, on a preliminary application for temporary alimony appeared in person. Prior to the *707 suit defendant had moved to New York and during the action moved to Pennsylvania and ultimately became domiciled in Florida. When the case was scheduled for trial, the Vermont attorney wrote to defendant but received no response. The trial date was adjourned to another date and counsel wrote again stating that if he did not hear from defendant he would withdraw. Four days prior to trial plaintiff filed with the court clerk amended pleadings requesting a divorce and defense counsel was so notified. Two days prior to trial defense counsel, not having heard from defendant, moved for withdrawal. Defendant was never notified of the amended pleading although his address was known to plaintiff. On the date of trial, both motions were granted and plaintiff awarded a divorce and alimony. Prior to grant of the Vermont judgment, defendant had become a domiciliary of Florida and had obtained an ex parte divorce there but he did not amend his answer in the Vermont action or otherwise bring this fact to the attention of the Vermont court. Thereafter, plaintiff sued upon the alimony provisions of the Vermont judgment in this State and moved for summary judgment.
The appellate court first noted that at the time of the Vermont action, the only way that court could have obtained in personam jurisdiction was through defendant’s general appearance. It held that "The withdrawal of the defendant’s attorney did not result in a withdrawal of the defendant’s appearance” (p 508). The court then stated that "it was the duty of the plaintiff to give notice of the new cause of action to the defendant and to give him a reasonable opportunity to be heard” (p 509). Notice of the trial on the separation action was not notice on the amended action for divorce. Finding that "it is undisputable upon this record that the defendant was not given a reasonable opportunity to appear and defend” (p 510) the court affirmed denial of summary judgment and remanded the matter for a hearing to determine if defendant had such notice and opportunity (285 App Div 991). Interestingly, at the factual hearing, it was ascertained that subsequent to the Vermont determination, defendant petitioned the Vermont court for a new trial on the ground that the Florida decree was a defense to the Vermont action and also alleged that plaintiff had amended her pleadings and the case tried when he was without counsel. The Vermont court denied defendant’s application for new trial and the New York appeals court held that defendant’s attack in Vermont was res *708 judicata since all issues were litigated there. Thus, it was held that the Vermont judgment was entitled to full faith and credit (Chapman v Chapman, 5 AD2d 257).
In my opinion, the first Chapman opinion controls this case at this stage of the proceedings, although plaintiff may have been subject to in personam jurisdiction in Texas by virtue of his business activity there absent a general appearance (Restatement, Judgments, § 8, Comment c). It is significant that the first Chapman opinion temporarily denied full faith and credit despite the fact that the pleadings were amended at a time when defendant had legal representation. The record herein is vague regarding defendant’s original prayer for relief against plaintiff personally but it is uncontraverted that the "Trial Amendment” constituted a substantial change from the original cause of action and personal liability was adjudged on the allegations contained therein. The amendment was filed when plaintiff lacked counsel and, upon this record, without notice to him.
The doctrine of continuing jurisdiction "has its limits and, where a party appears but takes no further action in a case, a court’s jurisdiction does not go beyond the general subject matter of the suit in which he appeared” (Matter of Einstoss, 26 NY2d 181, 187, supra). While the "Trial Amendment” asserted a related cause of action vis-a-vis the general subject matter, it was a new cause of action for a liability not heretofore placed in issue and plaintiff was entitled to notice and an opportunity to be heard (p 188; cf. Hodges, Collateral Attacks on Judgments 41 Tex L Rev 498, 508).
"The prerequisites for the issuance of a temporary injunction are: (1) likelihood of ultimate success on the merits; (2) irreparable injury absent the granting of the preliminary injunction; and (3) a balancing of the equities (Albini v Solork Assoc., 37 AD2d 835). Plaintiff has met this initial burden. The purpose of a temporary injunction is to prevent further perpetration of an alleged wrong until a trial, without "determining the merits of permanent relief (Intercontinental Ry. Co. v Barone, 246 App Div 450). An injunction pendente lite restores the status quo as it existed prior to the alleged violation and its grant or denial lies within the sound discretion of the court (Colson v Pelgram, 259 NY 370; Paul v Hunger, 47 NY 469). The court is faced with the delicate task of balancing the equities and relative hardship of the parties in determining whether or not the injunction shall issue *709 (Boomer v Atlantic Cement Co., 26 NY2d 219)” (Career Placement v Vaus, 77 Misc 2d 788, 795-796). At bar, plaintiff has established prima facie likelihood of ultimate success, irreparable injury and that the equities weigh heavily in his favor. Consequently, it is concluded that the portion of the judgment imposing personal liability must be stayed, on the terms set forth post, pending a determination on the issues raised regarding notice of the "Trial Amendment” and whether plaintiff had a reasonable opportunity to have been heard. In temporarily staying enforcement of the foreign judgment the court expresses no view on the merits and is merely exercising its inherent equitable jurisdiction (Wandschneider v Bekeny, 75 Misc 2d 32, 38-39), since it would, upon this record, be against the conscience of the court to sanction enforcement (Kinnier v Kinnier, 45 NY 535).
Defendant requests a bond in the sum of $100,000 to secure the temporary injunction. Plaintiff urges that at common law no bond was required to enjoin enforcement of a judgment procured by fraud (Burns v Morse, 6 Paige Ch 108). However, common-law rules on undertakings have been preempted by statutory provisions (see e.g. CPLR 2201; 5404, subd [b]; 6312, subd [b], par 1), and, it appears that upon the grant of a temporary injunction staying enforcement of a judgment where it has been established prima facie that the stayed judgment was obtained by fraud, the court may fix the undertaking at less than the amount awarded in the stayed judgment (7a Weinstein-Korn-Miller, NY Civ Prac, par 6312.19). Accordingly, plaintiff shall post an undertaking in the sum of $10,000 to secure defendant if it sustains damages by reason of the injunction and if it is ultimately determined that plaintiff was not entitled to one (CPLR 6312, subd [b], 6315). Additionally, the temporary injunction is further conditioned upon the terms set forth in the order to show cause regarding transfers for adequate consideration and the Texas judgment shall stand as security pending determination at the hearing hereon.
The only issue remaining[9] is whether the hearing should be *710 conducted in this State or whether the action for a declaratory judgment ought to be held in abeyance pending commencement and determination in a plenary suit in Texas (cf. Restatement, 2d, Conflict of Laws, § 115). In the court’s opinion, Texas is a more appropriate forum for resolution of the questions raised since it is in a superior position for examination of its own statutes, regulations and trial calendar customs (cf. CPLR 327). Indeed, plaintiff might be able to persuade the Texas court that an error of law was committed and the judgment is void. On the other hand, plaintiff is free to proceed in this State for a determination on the merits (Davis v Corune, 151 NY 172; Tamimi v Tamimi, 38 AD2d 197). Thus, the court shall afford plaintiff the option of choosing which forum" to proceed in and such selection shall be embodied in the order hereon.
If plaintiff opts for Texas, the proceeding must be commenced therein within 30 days after entry of the order hereon and an affidavit filed with this court and the Westchester County Clerk stating that such proceeding has been initiated; copies of the pleadings, briefs and exhibits must be filed with the Westchester County Clerk within 10 days after service or filing thereof in the Texas action; and a certified copy of the Texas court decision and order filed within 20 days after rendition thereof. If plaintiff opts for a hearing here before the court without a jury, he shall file a note of issue on the Calendar Clerk within 10 days after entry of the order hereon and the matter shall be referred to Special Term, Part III-A for a hearing limited to the issues of notice and an opportunity to have been heard.
Accordingly, the motion for a preliminary injunction is granted upon the terms and conditions set forth in this opinion, which conditions shall apply pending a determination in this court or in the court in Texas. Submit order on notice within 10 days after the date of this decision which order shall provide for service of a copy thereof on the County Clerk and Sheriff of Westchester County and the Clerk of the District Court, Dallas County, 160th Judicial District, Texas (No. 73-4893-H). The cross motion is denied and defendant shall serve its answer within 10 days after service of a copy of the order hereon with notice of entry.
*711 (On reargument, July 25, 1975)
Plaintiff moves for reargument of that portion of this court’s decision, dated June 6, 1975, and order, dated June 18, 1975, which directed the posting of a bond to stay enforcement of a Texas judgment pending a determination at a hearing to be held on certain issues. Defendant cross-moves for leave to reargue so as to increase the amount of security directed to be posted. It should be noted that defendant has filed a notice of appeal and that plaintiff has served a hearing note of issue on the Calendar Clerk. In all probability, absent any stay, the hearing will be heard during the month of August, 1975.
Reargument is granted and upon reargument, the court adheres to its original decision. Contrary to plaintiff’s assertion, the court has not found that defendant committed a fraud; rather the court determined that prima facie proof had been submitted to warrant the intervention of equity and the issuance of a temporary injunction. Thus, it is really not relevant whether or not this court has the inherent power to dispense with the statutory bond requirement since it has concluded that an undertaking be filed and, as a matter of judicial discretion, that it be in an amount less than the stayed judgment.
Defendant, in its cross motion, does not indicate the necessity for an increase and, in the absence of compelling reasons therefor, the amount shall remain as directed. The notice of cross motion does not specifically set forth any additional grounds for reargument nor does the 11 page reply memorandum submitted in support thereof. Nonetheless, by letter dated July 14, 1975, defendant sent certain exhibits to the court regarding proof of receipt by plaintiff of notice of the trial amendment. This is a matter of proof to be considered by the trier of the facts and cannot, at this belated time, alter the original disposition.
Accordingly, the motion and cross motion are granted to the extent of granting reargument and are otherwise denied.

. That is the allegation. In fact several corporations bearing plaintiff’s name were sued and judgment rendered against them.

. Actually, the Texas action was somewhat complex. As noted, defendant sued plaintiff and at least one of his corporations. That suit was consolidated with an interpleader action commenced by a tenant (Gulf State Paper Corp.) in a Dallas warehouse, which premises were under the control of D.H. Overmyer Co., Inc. (Texas) and Overmyer Distribution Services, Inc., both corporations being controlled by The Overmyer Co., Inc. (Delaware).

. Edmund Connery, formally Chief Counsel of the Overmyer legal staff states in an affidavit that prior to November, 1973, his staff consisted of seventeen attorneys but as of February, 1974, only two remained on salary. In 1973, his staff and local counsel were affording representation to Overmyer interests in 107 actions being litigated throughout the country.

. In finding number 8, the judgment denies a counter-claim interposed by D.H. Overmyer Company, Inc. (Texas), which was filed on October 11,1973.

. In any event, were an injunction to issue, the lawful mandate of the court must be obeyed and persons with knowledge thereof who violate said order would be guilty of criminal contempt, notwithstanding lack of jurisdiction (Matter of Lennon, 166 US 548; Matter of Puro v Puro, 33 NY2d 805; People ex rel. Stearns v Marr, 181 NY 463; Mount Sinai Hosp. v Davis, 8 AD2d 361; Matter of Waterhouse v Celli, 71 Misc 2d 600; Brandenburg v Metropolitan Package Store Assn. 29 Misc 2d 817).

. The affidavit of service states that the summons and complaint were served on defendant’s registered agent in Texas. Counsel for plaintiff, at the oral argument, stated that service of the amended complaint was also made simultaneously by the same process server. It might be noted that service could have been effected pursuant to subdivisions (a) and (b) of section 307 of the Business Corporation Law by serving the New York Secretary of State and delivering process in Texas or Connecticut personally or by registered mail.

. If CPLR article 54 is the equivalent of a special proceeding, one may question the propriety of an unauthorized foreign corporation’s suit here on a judgment (Business Corporation Law, § 1312, subd [a]; cf. CPLR 8501). This point is not raised by the parties (cf. Sirois Leather, Inc. v Lea-Suede Corp., 44 AD2d 815).

. Assuming for the moment that New York would deny enforcement of penal judgments, it is clear that the purpose of article 12.14 of the Texas Tax Code (20a Vernon’s Civil Statutes of Texas, Ann.) is to raise revenue (Acme Color Art Printing Co. v Brown 488 SW2d 507 [Tex]) and the predecessor statute was construed as "penal in nature” (Deveny v Success Co., 228 SW 295, 296; Real Estate-Land Title & Trust Co. v Dildy, 92 SW2d 318 [Tex]). The question that arises is whether this judgment is penal. The test is usually couched in terms of private versus public redress; if the wrong sought to be redressed is a wrong to the public, the judgment is penal; but if redress is for the benefit of a private individual, the judgment is not penal (Huntington v Attrill, 146 US 657). At bar, it seems clear that the judgment against plaintiff, while imposed under a penal statute, is not a penalty for public wrongs but inured solely to the benefit of the instant defendant and is predicated upon a private liability of one of plaintiffs corporations. Thus, it is concluded that the judgment is not penal.

. Defendant in its affidavit in support of the motion for dismissal argues that the time requirements of CPLR 5015 (subd [a] par (1) apply (cf. CPLR 317). However, it seems clear that CPLR 5015 is not applicable to judgments filed under article 54 (Thirteenth Annual Report of N.Y. Judicial Conference, [1968], pp 248, 283) and, in any event, the cited section does not apply to the instant facts (cf. CPLR 5015, subd [a], par 3). Further, plaintiff has presented a "justiciable controversy” in an action for declaratory judgment (CPLR 3001) which has been timely commenced (CPLR 213, *710 subd 1; cf. CPLR 213, subd 9; see Sorrentino v Mierzwa, 25 NY2d 59; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3001, pp 369-370).