OPINION OF THE COURT
Rolando T. Acosta, J.
This civil lawsuit is based upon events allegedly occurring during a series of particularly bitter landlord-tenant disputes which began in September of 1995. Disillusioned by the difficulty of the eviction process, plaintiff (the former landlord) is now suing defendant Jiminez (the plaintiff’s former tenant) *592 and defendant Ward, the attorney who represented the former tenant during the landlord-tenant proceedings. In an endorsed complaint, plaintiff describes her three causes of action as “malicious prosecution”, “abuse of process” and “intentional interference with economic advantage”.
Defendant Ward moves to, inter alia, dismiss the complaint for failure to state a cause of action, broadly arguing that he cannot be liable for aggressively representing his client in Housing Court. Plaintiff, appearing pro se, opposes the motion and cross-moves for summary judgment in her favor. She claims, in a supporting affidavit, that the causes of action have merit because during the various landlord-tenant proceedings (a) defendant Ward and defendant Jiminez commenced an illegal lockout claim which, according to plaintiff, they knew to be meritless; (b) defendant Ward and defendant Jiminez unjustifiably and unreasonably delayed one of the proceedings for over a year; (c) defendant Ward advised defendant Jiminez to refrain from paying rent in one of the proceedings; and (d) defendant Ward, presumably on behalf of his former client, defendant Jiminez, demanded a settlement payment from plaintiff and threatened prolonged litigation and significantly greater liability should plaintiff fail to comply with counsel’s demands.
The Prior Landlord-Tenant Proceedings
The facts underlying plaintiff’s causes of action, set forth in plaintiff’s supporting affidavit and the various exhibits submitted by both parties, are essentially undisputed. Plaintiff commenced a nonpayment proceeding against defendant Jiminez in September 1995. Although the nonpayment proceeding, brought pro se, was ultimately dismissed because the petition was defective, defendant Jiminez commenced, under the same index number, an illegal lockout proceeding against plaintiff, alleging that plaintiff had “kicked” her out of her apartment and “took all [her] possessions.”
A hearing on defendant Jiminez’s illegal lockout claim was held on January 10, 1996, before the Honorable Carl Callendar, during which defendant Ward represented defendant Jiminez. Following the hearing, Judge Callendar restored defendant Jiminez to possession of the subject premises, finding that plaintiff had “unlawfully and forcibly evicted” Jiminez in violation of RPAPL 853. Although plaintiff filed a notice of appeal from the order restoring Jiminez to possession, the parties have not indicated whether the appeal has been decided, or, for that matter, even perfected.
*593 Plaintiff commenced, a second nonpayment proceeding against defendant Jiminez in December 1995. Plaintiff now claims, and defendant Ward does not expressly dispute, that at some point during that proceeding, defendant Ward approached the plaintiff in the hallway and made “threats demanding money, [including] $5,000.00 for his client’s legal fees, in exchange for the apartment, [and] * * * demanding that [plaintiff] waive all rents owed.” According to plaintiff, defendant Ward also asserted that should plaintiff fail to “comply with his demands, it would take [plaintiff] a year to recover [her] apartment, and that he would sue [her] for hundreds of thousands of dollars.” This proceeding, however, was also dismissed and plaintiff does not allege any special damage resulting therefrom.
A third nonpayment proceeding was then commenced in April 1996. Plaintiff originally claimed that $6,675 was owed and later moved to amend the petition to include rental arrears. In defendant Jiminez’s answer to that petition, Jiminez claimed that she did not pay rent because her “counselor advised h[er] not to pay” the rent. Defendant Jiminez also later raised certain unspecified counterclaims and requested punitive damages for the prior illegal lockout which Jiminez claimed would offset any rent which may have been owed. After a trial, the court found that defendant proved her counterclaim in the amount of $462.50, that plaintiff proved that $5,550 was owed in rent, and that therefore defendant Jiminez was liable for $5,087.50. The Housing Court’s judgment, dated February 2, 1997, does not indicate a disposition of the punitive damages claim and the parties do not otherwise set forth any facts related thereto.
Although plaintiff claims that defendant Ward and defendant Jiminez unjustifiably and unreasonably delayed the latter proceedings for over a year, documents annexed to plaintiff’s motion indicate that the proceedings lasted for only 10 months and that during the proceedings defendants had claimed that it was the plaintiff who had delayed the case by requesting a mid-trial adjournment.
Discussion
Contrary to defendant Ward’s broad argument, his status as an attorney during the prior litigation does not cloak him with the type of immunity that he desires. Nor is he immune from liability by the mere fact that the current suit is concededly based exclusively upon acts which cannot be divorced from *594 that prior litigation. The courts simply have not been willing to go that far. (See, Board of Educ. v Farmingdale Classroom Teachers Assn., 38 NY2d 397, 405 [1975]; Dishaw v Wadleigh, 15 App Div 205, 209 [3d Dept 1897].)
Nevertheless, because our adversary system depends so heavily upon zealous advocacy and because public policy mandates that all persons should freely resort to the courts to redress wrongs and settle grievances, unhampered by the fear of unnecessary exposure to a subsequent suit (see, Board of Educ. v Farmingdale Classroom Teachers Assn., supra, at 404; Burt v Smith, 181 NY 1, 5 [1905]), courts will not countenance lawsuits against attorneys unless the facts alleged fall squarely within the four corners of one of the acknowledged categories of tort or contract liability. (Drago v Buonagurio, 46 NY2d 778, 780 [1978].)
Furthermore, the limited cognizable causes of action which are maintainable by third parties against an attorney for acts committed during prior litigation are often difficult to prove inasmuch as some form of malice or improper motive must be shown. (See, infra.) Thus, although lawyers are often sued for their perceived “outrageous” conduct during prior litigation by disillusioned litigants, plaintiffs are rarely successful in their attempt to withstand a motion to dismiss for failure to state a cause of action, or a motion for summary judgment.
Here, plaintiff commenced this suit by service of an endorsed complaint which simply identified, in a conclusory manner, the three causes of action alleged (i.e., “malicious prosecution”, “abuse of process”, and “intentional interference with economic advantage”; see, CCA 902 [a] [1] [permitting liberal pleadings— “by indorsement upon the summons” — in lower court civil actions]). In her affidavit submitted in support of her motion for summary judgment, however, plaintiff sets forth the factual basis and various exhibits (as indicated above) to support each of her claims.
Because plaintiff has cross-moved for summary judgment and the parties have clearly charted a summary judgment course in their motion papers,[1] the court has “search[ed] the record” (Amore Partners v Mephisto, Inc., 222 AD2d 473, 474 [2d Dept 1995]) to determine which party, if any, may be entitled to summary judgment. (CPLR 3212 [b].)
*595 The Malicious Prosecution Claim
Plaintiff’s cause of action for malicious prosecution is based upon her claim that during the prior landlord-tenant proceedings defendant Ward and defendant Jiminez commenced an illegal lockout claim {see, RPAPL 853) which they knew to be meritless, and that a court later restored possession of plaintiffs apartment to defendant Jiminez based upon that bogus claim. To prevail on this cause of action, plaintiff is required to prove the following essential elements: (a) that defendant commenced and prosecuted a prior judicial proceeding against the plaintiff; (b) that defendant commenced the proceeding without probable cause and with malice; (c) that the prior proceeding terminated in favor of plaintiff; and (d) that plaintiff suffered interference with his person or property as a result of the proceeding. (Burt v Smith, supra, 181 NY, at 5; Butler v Ratner, 210 AD2d 691, 693 [3d Dept 1994]; Realty By Frank Kay v Majestic Farms Supply, 160 AD2d 789, 790 [2d Dept 1990].)
Although plaintiff clearly set forth facts to prove that defendant commenced the illegal lockout claim without probable cause and with malice and that she suffered interference with her property as a result of that claim, there is nothing in the affidavit submitted in support of her motion for summary judgment which even slightly indicates that the proceeding terminated in her favor. On the contrary, plaintiff laments unceasingly in her opposing papers the fact that the illegal lockout claim was terminated not in her favor, but in favor of defendant. Indeed, Judge Callendar, who presided over the hearing on the illegal lockout claim, specifically found that plaintiff had “unlawfully and forcibly evicted” Jiminez in violation of RPAPL 853, and thus restored defendant Jiminez to possession of the subject premises.
This deficiency in proof alone is fatal to plaintiffs malicious prosecution claim because, by admitting in her supporting affidavit that the illegal lockout claim was not terminated in her favor, plaintiff essentially negated an essential element of her cause of action.[2] (See, Otiniano v Magier, 181 AD2d 438, 439 [1st Dept 1992]; Realty By Frank Kay v Majestic Farms *596 Supply, supra, 160 AD2d, at 790; Brand Mfg. Corp. v Olit Assocs., 132 AD2d 684, 685 [2d Dept 1987].)
Furthermore, Judge Callendar’s ruling, aside from defeating plaintiffs cause of action for lack of proof of a favorable termination, also gives rise to a presumption that the prior proceeding was commenced with probable cause, inasmuch as a court has already necessarily passed upon the merits of the prior action. (Hornstein v Wolf, 67 NY2d 721, 723 [1986]; Butler v Ratner, supra, 210 AD2d, at 693-694.) Plaintiff was thus obliged to set forth additional facts sufficient to overcome that presumption (supra), which she clearly failed to do.
Because plaintiffs own affidavit effectively negates essential elements of the malicious prosecution claim, that cause of action has no merit. Summary judgment in favor of defendant Ward is therefore granted as to the cause of action for malicious prosecution.
The Abuse of Process Claim
Although it is difficult to decipher from plaintiffs supporting affidavit the precise proof plaintiff is relying upon to support her cause of action for abuse of process, it appears that she is basing that claim upon the grounds that defendant Ward commenced an illegal lockout claim which he knew to be merit-less; unjustifiably and unreasonably delayed one of the nonpayment proceedings for over a year; and demanded a settlement payment from plaintiff, threatening prolonged litigation and significantly greater liability should plaintiff fail to comply with counsel’s demands. To prevail on this cause of action, plaintiff is required to prove (a) that defendant Ward initiated regularly issued civil process compelling the performance or forbearance of some prescribed act; (b) that defendant Ward, in activating process, was moved by a purpose to do harm without economic or social excuse or justification and that plaintiff did sustain injury to or an interference with her person or property; and (c) that defendant Ward perverted the process by seeking some collateral advantage to the plaintiff outside the legitimate ends of the process. (Board of Educ. v Farmingdale Classroom Teachers Assn., 38 NY2d 397, 403, supra; Curiano v Suozzi, 63 NY2d 113, 116 [1984].) Because plaintiff failed to set forth any facts at all to indicate that defendant Ward instituted regularly issued process for other than its proper purpose, her allegations are clearly insufficient to make out the abuse of process claim.
Plaintiffs factual allegation that defendant Ward knowingly commenced a meritless illegal lockout action, for example, is *597 insufficient because the mere “institution of a civil action * * * is not legally considered process capable of being abused” (Curiano v Suozzi, supra, 63 NY2d, at 116), and plaintiff is unable to set forth any other facts sufficient to establish how this process was diverted from its lawful purpose after it was issued — which is the “ ‘gist of the action for abuse of process’ (Williams v Williams, 23 NY2d 592, 596 [1969].) Indeed, plaintiff’s own affidavit indicates that defendant utilized the illegal lockout provision contained in RPAPL 853 not for an improper purpose, but “in a manner consonant with the purpose for which that procedure was designed” (i.e., to be restored to possession of the subject premises). (Board of Educ. v Farmingdale Classroom Teachers Assn., supra, 38 NY2d, at 404.) Dissatisfied with the Housing Court’s ruling restoring defendant to possession, plaintiff is really “complaining] [about] * * * the process itself rather than of its perversion by defendants.” (Raved v Raved, 105 AD2d 735, 736 [2d Dept 1984].)
Nor is the element of regularly issued process made out by plaintiff’s allegation that defendant Ward attempted to coerce a settlement agreement between the parties. Settlement attempts, however coercive or overbearing, do not alone directly involve the “ ‘judicial process’ ” and thus cannot suffice to form the basis for an abuse of process claim. (Varela v Investors Ins. Holding Corp., 185 AD2d 309, 311 [2d Dept 1992] [citations omitted], affd 81 NY2d 958, 961 [1993].) Furthermore, inasmuch as the nonpayment proceeding which defendant Ward attempted to settle was ultimately dismissed and plaintiff, undeterred, immediately commenced a new proceeding in which she ultimately prevailed, plaintiff, having rejected the settlement demands, cannot establish any injury or interference with her person or property deriving from the settlement demands — another essential element of a cause of action for abuse of process. (Supra.)
Finally, the element of regularly issued process is not made out by plaintiffs claim that defendant Ward unjustifiably and unreasonably delayed one of the nonpayment proceedings for over a year. Aside from the fact that plaintiffs allegation is refuted by other portions of plaintiffs affidavit and the exhibits attached thereto (which place responsibility for the delay squarely upon plaintiffs own attorney), requests for adjournments alone cannot constitute regularly issued process contemplated by the abuse of process cause of action since the “process” alleged did not compel the performance or forbearance of some prescribed act.
*598 Plaintiffs cause of action also lacks merit because plaintiff fails to set forth any facts to establish that defendant Ward was moved by a purpose to do harm without economic or social excuse or justification in commencing the illegal lockout claim, in attempting to settle the case and in prolonging the prior proceeding. Indeed, if anything, plaintiff appears to admit that defendant Ward engaged in the aforementioned strategies to protect the interests of his former client, defendant Jiminez. That justification, loathed by plaintiff and yet required by Canon 7 of the Code of Professional Responsibility (Code of Professional Responsibility EC 7-1; DR 7-101 [A] [1] [22 NYCRR 1200.32 (a) (1)]), negates an essential element of the abuse of process cause of action.
Accordingly, summary judgment in favor of defendant Ward is also granted as to the abuse of process claim.
The Intentional Interference with Economic Advantage Claim
Plaintiffs intentional interference cause of action is based upon her allegation that defendant Ward had advised his former client, defendant Jiminez, to refrain from paying rent even though Ward knew that a lease agreement existed between the plaintiff and Jiminez which required Jiminez to pay rent. Plaintiff has no cause of action for intentional interference with economic advantage on that factual basis because attorneys are “immunized from liability under the shield afforded attorneys in advising their clients, even when such advice is erroneous, in the absence of fraud, collusion, malice or bad faith”. (Beatie v DeLong, 164 AD2d 104, 109-110 [1st Dept 1990], citing Restatement [Second] of Torts § 772; see also, Goldner v Sullivan, 105 AD2d 1149, 1150 [4th Dept 1984] [“there is a general principle enunciated in the applicable authorities that attorneys should be free to advise their clients without fear of liability to third parties” and thus counsel’s advice “not to pay” on an insurance policy is likely not actionable on an intentional interference claim].)
Here, it appears from the exhibits annexed to plaintiffs own motion that defendant Ward had advised his client not to pay rent because of certain damages which he believed his client sustained as a result of a breach of the warranty of habitability and an illegal eviction. Indeed, the Housing Court sustained a portion of the defendant’s counterclaim, reducing defendant’s liability for rent accordingly, and otherwise found that the plaintiff was not entitled to the amount of rent for which she sued. It is, of course, well established that the duty *599 to maintain residential premises in a habitable condition is coextensive and interdependent with the duty to pay rent.
Because there is no indication that defendant Ward acted without good faith and for purely personal reasons, the intentional interference claim also has no merit, and summary judgment is granted in favor of defendant Ward.
Conclusion
Plaintiffs difficulty in evicting her former tenant in the prior landlord-tenant proceedings was borne from the appropriate zeal of defendant’s attorney and plaintiffs own decision to proceed pro se in the proceedings. The court particularly sympathizes with the plaintiffs extraordinary frustration with the prolonged nature of the summary proceedings in Housing Court and with the way in which counsel allegedly attempted to settle the landlord-tenant case. Indeed, Administrative Judge Fern Fisher-Brandveen’s recent Housing Court Initiative (as amended, Apr. 10, 1998) addresses these very concerns, creating Resolution Parts to supervise the appropriate settlement of cases (designed to avoid the type of overreaching that was alleged here), and an Expediter Part to ensure the availability of Trial Parts when necessary and on demand. (See also, RPAPL 745 [the so-called rent deposit law].)
The court’s sympathy notwithstanding, plaintiffs causes of action sounding in malicious prosecution, abuse of process or intentional interference with economic advantage simply do not have any merit. Nor does plaintiffs affidavit make out any other cognizable cause of action. Accordingly, summary judgment is granted in favor of defendant Ward and plaintiffs motion for summary judgment in her favor is denied.
In view of the court’s ruling, the court need not address defendant Ward’s motion to dismiss the complaint for failure to state a cause of action. Finally, defendant’s motion for costs is denied, as is plaintiffs cross motion for the imposition of sanctions.

. Defendant Ward has expressly consented to — indeed has moved in the alternative for — the court deeming his motion to dismiss as his answer to the complaint.

. Notably, plaintiffs cause of action also has no merit because her affidavit raises doubt about whether the illegal lockout claim was technically “terminated” at all, inasmuch as plaintiff admitted that a notice of appeal from that judgment had been filed and there is no indication as to whether the appeal had been perfected, withdrawn or otherwise disposed of. (See, Restatement [Second] of Torts § 659, comment f, at 419.)