**3H ENTERPRISES, INC. and Steven Hochman, Plaintiffs,**

v.

**John Steven DWYRE, Teresa Santellanes, and Mauro Santellanes, Defendants.**

**No. 01–CV–1200.**

United States District Court, N.D. New York.

Dec. 12, 2001.

Herbert Jordan, Jordan, Walster Law Firm, Roxbury, NY, for Plaintiffs.

John Steven Dwyre, pro se.

Michael Bernard Mendelson, Diamond, Mendelson Law Firm, Delhi, NY, for Defendants.

### DECISION & ORDER

MCAVOY, District Judge.

This is one of many lawsuits rising out of the parties' business dealings in Texas. 3H Enterprises (3H) and Steven Hochman (Hochman), plaintiffs in this action, allege an abuse of process by Teresa Santellanes and Mauro Santellanes (collectively "the Santellanes") and their attorney in Texas John Steven Dwyre (Dwyre). Before this Court are Defendants' motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim, and *res judicata*. Additionally, Defendants move for sanctions against Plaintiff Hochman and his attorney.

### I. Procedural Background

This motion was originally filed by the Defendants *pro se*.[1] Plaintiffs responded to that motion. While a decision was pending, the Santellanes Defendants obtained New York counsel, who requested permission to file supplemental motion papers. Permission was granted, and Plaintiffs have responded to the Santellanes' motion papers as well. Thus, the Court makes the following decision based upon all of the submissions.

### II. Factual Background

The Santellanes are residents of Texas. Dwyre was their attorney in the prior New York and Texas actions. 3H is a business incorporated in Delaware County, New York, that was, prior to the Texas lawsuit, doing business in Texas. Hochman is the sole shareholder, director and officer of 3H. Compl. ¶ 2. 3H is in the business of buying and selling mortgages. Hochman

Aff. ¶ 2. Sometime in 2000, the Santellanes contracted to sell a mortgage to 3H. Compl. ¶ 3. The Santellanes did not complete the transaction. 3H alleges that it was the Santellanes who breached the contract without cause. Compl. ¶ 4. All of 3H's contracts contained forum selection clauses and liquidated damages clauses. Following the Santellanes refusal to go through with the contract, 3H brought suit in Delaware County, New York, the place listed in the forum selection clause. That action was dismissed on the basis of *forum non conveniens*. Compl. ¶ 6. 3H filed a notice of appeal, but that appeal remained unperfected. Compl. ¶ 7. Following the dismissal of the New York lawsuit, the Santellanes, with Dwyre as their attorney, brought suit in a Texas court alleging that 3H was engaged in a fraudulent scheme. That action sought damages and injunctive relief. Compl. ¶ 8. 3H contested jurisdiction in the matter and lost. Texas Judgment, p. 1–2. 3H then answered in the action through its Texas attorneys. Texas Judgment, p. 1. Following the answer, 3H discharged its counsel and did not proceed further in the action. Hochman Aff. ¶ 2. Hochman states in his affidavit that "I then decided, on May 22, to cut our losses and discharge Texas counsel and deal somehow with whatever legitimate consequences might follow." Hochman Aff. ¶ 6.

The Santellanes through Dwyre then moved for a default judgment. Compl. ¶ 10. The Texas Court found that 3H, without cause, decreased the amount of money the Santellanes were to receive and attempted to force them to take less money. Texas Judgment, p. 5, ¶¶ 7–8. The Court awarded damages to the Santellanes and attorney's fees to Dwyre. Compl. ¶ 10; Texas Judgment, p. 7. An injunction

---

1. The Court notes that Defendant Dwyre is still proceeding *pro se*. This is, however, largely due to the fact that he is an experi- enced attorney admitted in the state and fed- eral courts of Texas.

was also issued. Compl. ¶ 10; Texas Judgment, p. 12, ¶ 7; *see also* Permanent Injunction. It is undisputed that neither 3H nor Hochman has paid either the judgment to the Santellanes or the attorney's fees award to Dwyre.

It now appears that after having a similar judgment rendered in Florida, 3H ceased doing business entirely. Neither of these judgments has been paid by 3H. Mendelson Aff. ¶ 2; Dwyre Aff. ¶ 12. Plaintiff Hochman contends that he stopped doing business in other states for business reasons, but stopped doing business in Texas solely because of the injunction issued against him. Hochman Second Aff. ¶¶ 3–5.

During the Texas litigation, while 3H was still actually defending the action,[2] Dwyre served a notice to take the deposition of Hochman in New York. Hochman moved to quash the notice, but his motion was denied. The Court issued an order allowing Hochman the choice of appearing for deposition in Texas on a specific date or arranging for a deposition in New York with the costs to be paid by him.

Hochman failed to appear on the specified date, or to arrange for a New York deposition after being ordered by the Texas court to do so. Def.Mem.L., Ex. "3," Texas order. Thereafter Dwyre moved for contempt and various discovery sanctions, including the striking of defendant's answer and judgment as a matter of law. In that motion, Dwyre states, "[d]eath penalty sanctions are warranted. This Defendant has failed to comply with an important order of this Court and is not cooperating with discovery." *Id.* An order resulted from this motion which states that "[d]efendant, Steve Hochman is commanded to appear and show cause why he should not be held in contempt of court for not appearing as ordered at his deposition

on June 11, 2001." *Id.* at Order. Plaintiff Hochman contends that this was "an *ex parte* order commanding Hochman to appear in Texas for deposition on August 2, 2001, or face the 'death penalty'." Compl. ¶ 11. Hochman never appeared before the Court to show cause why he should not be held in contempt. Following the failure of Plaintiff Hochman to appear for the third time, the Court entered a default judgment.

Plaintiffs now bring this action alleging that Dwyre and the Santellanes were motivated by malice against him, and thus abused process against him. He alleges that the default judgment in Texas effectively precludes him from doing business in Texas, and he asks this Court to award him damages for his emotional distress and his loss of business as a result of the Texas judgment.

Defendants move to dismiss the complaint for lack of jurisdiction, failure to state a claim upon which relief can be granted, and *res judicata.* Defendants also move for sanctions against Plaintiffs and their attorney. For the reasons that follow, Defendants motion to dismiss is granted.

## III. Discussion

### A. Personal Jurisdiction

Defendants contend that there is no personal jurisdiction over them because they lack the minimum contacts with New York.

On a motion to dismiss for lack of personal jurisdiction, the Plaintiff bears the burden of demonstrating the Court has jurisdiction. *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999). Where the motion to dismiss is made prior to discovery, the plaintiff can defeat the motion with "legally sufficient allegations

---

**2.** It appears that this was after Plaintiffs dis- charged their Texas counsel.

of jurisdiction." *Photoactive Productions, Inc. v. AL–OR International Ltd.*, 99 F.Supp.2d 281, 285 (E.D.N.Y.2000) (citations omitted). Thus, the Plaintiff must make a "prima facie showing of jurisdiction." *Photoactive Productions*, 99 F.Supp.2d at 285 (citations omitted). In this diversity action, jurisdiction is determined by the law of the state in which the federal court sits. *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 35 (2d Cir.2001); *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997). Thus, New York law determines whether jurisdiction exists.

### 1. New York Long Arm Jurisdiction

■■■ Plaintiffs seek to premise jurisdiction on New York's long-arm provision, C.P.L.R. 302(a). C.P.L.R. 302(a) does not require the same level of contacts with New York as are required for jurisdiction under C.P.L.R. 301. However, in order to exert jurisdiction under C.P.L.R. 302, the cause of action must arise out of the established contacts. *National Telephone Directory Consultants, Inc. v. Bellsouth Advertising & Publishing Corp.*, 25 F.Supp.2d 192 (S.D.N.Y.1998) (citations omitted). Purposeful availment is the cornerstone of long-arm jurisdiction in New York. *See Courtroom Television Network v. Focus Media, Inc.*, 264 A.D.2d 351, 695 N.Y.S.2d 17, 18 (1st Dep't 1999) (citations omitted). Thus, jurisdiction is appropriate where the party has projected itself into New York, and where it has put itself in the position to receive the benefits of New York law and commerce. *National Telephone Directory*, 25 F.Supp.2d at 196.

■■■ Further, when long arm jurisdiction is at issue, the Court must also ensure that the exercise of jurisdiction does not implicate constitutional concerns and will not offend "traditional notions of fair play and substantial justice." *People v. Concert Connection, Ltd.*, 211 A.D.2d 310, 314, 629 N.Y.S.2d 254 (2nd Dep't 1995) (quoting *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Thus, certain "minimum contacts" must exist in order to confer jurisdiction on the Court. *Mario Valente Collezioni, Ltd.*, 264 F.3d at 35 (federal law of minimum contacts determines· whether exercise of jurisdiction is constitutional).

Plaintiffs makes a number of arguments regarding jurisdiction. The Court will address each in turn.

### 2. C.P.L.R. 302(a)(2)

■■■ Plaintiffs first seek to premise jurisdiction on C.P.L.R. 302(a)(2). That statute provides jurisdiction over a person who commits a tortious act within New York. In relying on this provision, Plaintiffs contend that because Defendant Dwyre issued process in New York, he committed a tortious act within the state. *See* Pl.Mem.L. 14. What Plaintiffs seem to ignore here is that the issuing of process is *not* the tortious act complained of. Abuse of process does not concern the issuance of process, but rather " 'the improper use of process after it is regularly issued.' " *Labensky v. County of Nassau*, 6 F.Supp.2d 161, 177 (E.D.N.Y.1998) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994)). It is this characteristic which distinguishes malicious prosecution[3] from abuse of process. Consequently, Plaintiffs have failed to make a prima facie case based on the commission of a tort in New York.

### 3. C.P.L.R. 302(a)(1)

■■■ Jurisdiction under C.P.L.R. 302(a)(1) is appropriate where a person

---

**3.** Plaintiffs do not assert a claim for malicious prosecution; nor could he do so. The proceeding he challenges did not end in his favor as is required for a malicious prosecution claim.

transacts business within New York. Plaintiffs claim that even if the issuance of process was not a tortious act within New York, it did constitute a transaction of business within the meaning of the statute. Pl.Mem.L. 16. In support of this contention, Plaintiffs cite *Overmyer v. Eliot Realty*, 83 Misc.2d 694, 371 N.Y.S.2d 246 (N.Y.Sup.Ct.West.Co.1975) (Gagliardi, J.S.C.). In *Overmyer*, Judge Gagliardi found jurisdiction where the defendant had participated in negotiations in New York, sent representatives to New York to collect rents, and participated in the reorganization of the plaintiff company in New York. 371 N.Y.S.2d at 252. Additionally, the defendant had sought enforcement of a judgment in New York state court. *Id.*

*Overmyer* does not support the contention advanced by Plaintiffs here that the sole act of paying for process to be issued in New York subjects one to jurisdiction in New York. The defendant in *Overmyer* had substantial contacts to New York, and, in fact, sought to have a judgment enforced in New York. Those contacts are lacking here.

There are no allegations that would indicate the defendants transacted business in New York. *See Bensusan*, 126 F.3d at 29 (must be effort on part of defendant to enter New York law or commerce). Neither the Santellanes nor Dwyre have sought enforcement of any part of the Texas judgment in New York. The defendants did not even attempt to have the contempt order of the Texas court enforced in New York. There are no allegations that Dwyre or the Santellanes did business at any time in New York. Thus, there exists no transaction of business in New York. *See Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 452, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

While this Court declines to decide whether process can ever serve as a basis for jurisdiction, on the facts presented, no personal jurisdiction exists over these defendants based on paying a process server to issue process in New York.

### 4. Jurisdiction Under 302(a)(3)

Finally, Plaintiffs seek to premise jurisdiction on C.P.L.R. 302(a)(3). That statute provides in relevant part that jurisdiction exists over a non-domiciliary who:

> commits a tortious act without the state causing injury to person or property within the state, ..., if he ... (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;

### N.Y.C.P.L.R. 302(a)(3) Jurisdiction over the Santellanes

Plaintiffs make no allegations regarding the revenue of the Santellanes. The only statements in this regard come from the Santellanes and their attorney. The Santellanes derive their sole income from their nursing jobs in the State of Texas. Mauro Aff. ¶ 4–5; Theresa Aff. ¶ 4–5. Consequently, they do not "derive[] substantial revenue from interstate or international commerce," and cannot be subject to jurisdiction in New York pursuant to C.P.L.R. 302(a)(3). The action as to the Santellanes is dismissed for lack of jurisdiction.

### N.Y.C.P.L.R. 302(a)(3) Jurisdiction over Dwyre

Plaintiffs make no allegations of jurisdiction in the complaint. *See* Complaint. In their first set of opposing papers, Plaintiffs make the sole allegation that

> one Connie Harris, acting on behalf of defendant Dwyre, solicited JC Process to serve the papers, transmitted them by mail to JC Process in New York, and

along with them transmitted a check drawn on Dwyre's firm as payment for the services.

Jordan Aff. ¶ 5. In their memorandum of law, Plaintiffs elaborate that Plaintiffs Hochman and 3H were injured in New York by having their business operations in Texas curtailed and their litigation in New York ended. Plaintiffs then contend that Defendant Dwyre derived substantial revenue from interstate commerce[4] and that he should have, and did, expect his actions to have substantial impact in New York.

Plaintiffs have made sufficient allegations regarding Dwyre's interstate business to entitle them to jurisdictional discovery on the issue. Further, for purposes of determining whether jurisdiction exists, the Court will assume that a tortious act was committed. Thus, the Court must determine whether the exercise of jurisdiction over Dwyre comports with constitutional due process.

 Constitutional due process requires that it be foreseeable that a party might be "haled into court" in New York as a result of his actions. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This is reflected in the C.P.L.R. 302(a)(3)(ii) requirement that a defendant "expects or should reasonably expect the act to have consequences in the state." C.P.L.R. 302(a)(3)(ii). In order for an action to create forceable consequences, due process requires that the defendant "purposefully established" contact with New York. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("the constitutional touchstone remains whether the defendant purposefully established 'minimum con-

tacts' in the forum"). Put another way, "[a] non-domiciliary tortfeasor has 'minimum contacts' with the forum State-and may thus reasonably foresee the prospect of defending a suit there-if it 'purposefully avails itself of the privilege of conducting activities within the forum State.'" *La-Marca v. Pak-Mor Manufacturing Co.,* 95 N.Y.2d 210, 216, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000)(quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); and citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. 559; *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. 2174). This requirement ensures that a defendant will not be forced to defend suit in a far-away jurisdiction solely because "of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

Defendant committed the purposeful act of having process served in New York. Defendant Dwyre initiated the contact with New York. Further, it was foreseeable that the lawsuit would have consequences in New York. Indeed, the various provisions of the preliminary injunction prohibit the maintenance of actions in New York against Texas residents. These provisions were to have a direct effect on 3H's pending appeal in New York. Dwyre's argument that it was the Court and not he who caused process to be served in New York ignores that the Court allowed process to be served *only* upon his application. Adopting Dwyre's view of process would render the torts of abuse of process and malicious prosecution moot, even in truly meritorious cases. Thus, the Court finds that defendant Dwyre purposefully availed himself of New York law by effectuating the service of process here.

---

4. This is premised on Dwyre being admitted to both the Eleventh Circuit which encom-

passes more than Texas and the Ninth Circuit, which does not include Texas.

■ The second step in the constitutional analysis requires the Court to determine whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Requiring that the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice" is "another way of asking what is reasonable." *LaMarca,* 95 N.Y.2d at 217, 713 N.Y.S.2d 304, 735 N.E.2d 883 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. at 476, 105 S.Ct. 2174; *International Shoe v. Washington,* 326 U.S. at 320, 66 S.Ct. 154). Thus, the Court should consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *LaMarca,* 95 N.Y.2d at 217, 713 N.Y.S.2d 304, 735 N.E.2d 883. The Court must also consider the interests of the interstate judicial system and the shared interests of the several states. *LaMarca,* 95 N.Y.2d at 217, 713 N.Y.S.2d 304, 735 N.E.2d 883 (citing *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026).

While the issue of the reasonableness of subjecting defendant Dwyre to jurisdiction in New York is not as clear, the Court finds that the factors in *Asahi* weigh slightly in favor of jurisdiction. Although the burden on Dwyre will be substantial, New York has a great interest in providing its residents with a forum in which to obtain relief for wrongs committed. Further, the Plaintiffs have a great interest in obtaining relief in their chosen forum as well. There are few, if any, interests of the judicial community or the several States involved. There is no pending litigation elsewhere. Nor have there been any assertions that another forum would be better suited to handling the issues presented to this Court. Consequently, the Court finds that the plaintiffs have made out a prima facie case of jurisdiction over defendant Dwyre. Dwyre's motion to dismiss for lack of jurisdiction is denied at this time.

## B. Venue

■ Dwyre also moves to dismiss this action because of improper venue. 28 U.S.C. § 1391 provides that in an action based on diversity jurisdiction, venue is proper only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Under this statute, Dwyre contends that venue is proper only in Texas.

It is clear that all of the defendants reside in Texas, and thus under 28 U.S.C. § 1391(a)(1), jurisdiction would only be proper in Texas. Moreover, all of the actions which form the basis for this alleged tort took place in Texas. The action was brought in Texas. It was prosecuted in Texas courts. The injunction restricts Plaintiffs' business activities in Texas. Thus, under 28 U.S.C. § 1391(a)(2), venue is proper in Texas. 28 U.S.C. § 1391(a)(3) does not apply because there is a forum available to the Plaintiffs in Texas should they choose to use it.

Hochman asserts that he resides in New York and that the service of process occurred in New York. This does not, however, overcome the showing that venue is proper only in Texas. Hochman sues for an abuse of process that curtailed his Tex-

as business activities. All of the witnesses, except Hochman, and all of the events surrounding this alleged abuse of process occurred in Texas. Thus, Texas is the place Plaintiffs should bring this action.

■ The appropriate remedy where an action is filed in an incorrect venue is dismissal of the action, unless the interests of justice require a transfer. 28 U.S.C. § 1406(a). Since the statute of limitations has not run, Plaintiffs will be able to commence their action in Texas should they so desire. No other "interests of justice" are implicated by a dismissal of the action. Further, Defendants have asked that the action be dismissed, and Plaintiffs have not requested the alternative relief of a transfer to the Texas District Court. Thus, the action as to Defendant Dwyre is dismissed for improper venue.

## C. Failure to State a Claim for Abuse of Process

■ Even if this Court were to find jurisdiction and venue, Plaintiffs have failed to state a claim for abuse of process under New York law.[5] The elements for a claim of abuse of process are: (1) regularly issued process (civil or criminal); (2) an intent to do harm without excuse or justification; and (3) use of the process in a perverted manner to obtain a collateral objective. *Board of Education of Farmingdale v. Farmingdale Classroom Teachers Association*, 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975); *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984).

■ In order to state a claim for abuse of process, the complaint must allege the use of judicial process for "a purpose not sanctioned by law." *Raved v. Raved*, 105 A.D.2d 735, 481 N.Y.S.2d 170, 171 (2d Dep't 1984). Allegations of a "[w]rongful or malicious motive alone [are] not enough." *Id.* (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324; *Bohm v. Holzberg*, 47 A.D.2d 764, 365 N.Y.S.2d 262 (2d Dep't 1975)). The use of the process must be "completely devoid of social or economic justification." *Greenfield v. Schultz*, 251 A.D.2d 67, 673 N.Y.S.2d 684, 685 (1st Dep't 1998).

■ Where a plaintiff merely complains about the outcome of a case, no claim has been alleged. *See Raved*, 481 N.Y.S.2d at 171 (plaintiff complains of the process rather than its perversion); *Tsafatinos v. Ward*, 177 Misc.2d 590, 676 N.Y.S.2d 748, 752 (N.Y. City Civ.Ct. Kings Co.1998), *aff'd* 179 Misc.2d 1045, 691 N.Y.S.2d 820 (N.Y.Sup.App.Term 1999) (quoting *Williams v. Williams*, 23 N.Y.2d 592, 596, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969) (plaintiff fails to allege how process was "diverted from its lawful purpose" and is thus complaining of the process itself)).

Plaintiffs allege that the defendants had, as their purpose: (1) to coerce and intimidate plaintiffs, (2) to prevent them from pursuing the breach of contract claim against the Santellanes in either New York or Texas, (3) to put plaintiffs out of business as to Texas residents, and (4) to procure from plaintiffs substantial legal

---

5. The Court notes that the parties have not disputed that New York law applies to the claim for abuse of process. The elements for a claim under Texas law are (1) that the defendant make an illegal, improper or perverted use of the process, (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to Plaintiff as a result of such irregular act. *Rodriguez v. Carroll*, 510 F.Supp. 547, 553 (S.D.Tex.1981) (citing *J.C. Penney Co. v. Gilford*, 422 S.W.2d 25 (Tex.Civ.App.1967)); *Williams v. City of Dallas*, 53 S.W.3d 780, 787 (Tex.App.2001). Although stated differently, the elements appear to be the same. Thus, the analysis under Texas law would likely be identical.

260

fees for defendant Dwyre. Complaint ¶ 13.

There is nothing improper about the use of the Texas action to provide the maximum benefit to the Santellanes or the Texas public. Defendant Dwyre was *required* to attempt to obtain the best possible result for his clients. Thus, it was entirely proper for Dwyre to seek to have the breach of contract action against the Santellanes dismissed, as well as to obtain a monetary judgment off-setting their costs in bringing the action. Clearly the goal of the Santellanes was to be placed in the position they had been in prior to their dealings with Hochman.

 Suits against attorneys for actions taken in the scope of representation of their clients must allege facts that "fall squarely within the four corners" of the tort. *Tsafatinos*, 676 N.Y.S.2d at 751 (citing *Drago v. Buonagurio*, 46 N.Y.2d 778, 780, 413 N.Y.S.2d 910, 386 N.E.2d 821 (1978)). Simply alleging outrageous conduct on the part of an attorney during his representation of an opposing party will not suffice to state a claim. *Id.* Our system requires attorneys to zealously represent their clients, and, in many cases, the public as well. Suits against attorneys for their actions taken in zealously representing their clients must be held to the highest standard. *Id.*

Plaintiffs have failed to allege any improper action on the part of Dwyre in helping his clients procure the full remedy available to them under the Texas law. Further, the Texas judgment is not "without any social or economic justification" as is required to state a claim for abuse of process. The judgment applies to protect the Texas public from what the Texas court perceived to be great social harm caused by 3H's business practices. The Texas decision details these practices as well as the provisions of Texas law relied on for the result.

It is also clear that the plaintiffs are not "out of business" in Texas, except by Hochman's choice. First, Plaintiffs should have expected, given their significant Texas business, that they would be subject to Texas law. It is quite clear that they derived substantial revenue from Texas and benefitted from their Texas business contacts. Thus, there was nothing improper about the action being brought in Texas.

After the decision finding jurisdiction existed over 3H in Texas, it was Hochman who chose not to appear in the Texas action. Hochman chose not to comply with discovery orders issued by the Texas court, despite the Court's willingness to allow the discovery to take place in New York as long as Hochman paid the costs. Hochman also chose not to assert any alleged breach of contract by the Santellanes as a counterclaim in the Texas action. Hochman and 3H now choose not to do business in Texas rather than comply with the stringent requirements of the Texas injunction.

Defendants did not prevent Plaintiffs, who were, by their own admission, doing substantial business in Texas, from defending the Texas action. Plaintiffs chose to "cut [their] losses." That the remedy was more harsh than Plaintiffs anticipated does not render the action an abuse of process. The various submissions regarding the Texas action show that Dwyre and the Santellanes attempted to settle the various actions with Hochman, that they attempted to obtain Hochman's cooperation with discovery prior to going to the Court to obtain an order for discovery, and that they attempted to enforce the Court ordered discovery prior to requesting the default judgment. Plaintiffs were afforded legal process, without abuses, they simply chose not to use that process.

With regard to attorney's fees, it is not disputed that defendant Dwyre has received no attorneys fees from the plaintiffs thus far. Further, the attorneys fees awarded in the Texas action were hardly substantial. They were available as a remedy under Texas law and were supported by findings of fact regarding their necessity. *See* Texas judgment, p. 12, ¶ 5(b). Again, had Plaintiffs chosen to appear in Texas and contest the action, they could have contested the amount of attorney's fees awarded as well.

Finally, Plaintiffs allege no facts to support the solely conclusory allegation that the purpose of the lawsuit was to "coerce and intimidate plaintiffs." In this regard, Plaintiffs allege bad faith through Hochman's affidavit because Dwyre and the Santellanes offered to settle the action in exchange for Hochman agreeing to drop the New York action and pay a "trivial amount" of their legal costs. Hochman Aff. ¶ 8. To the contrary, the settlement proposed in this action was a reasonable compromise. What the defendants asked for was to be placed in the position they had been in prior to their contract with 3H, a reasonable position to take given the expense of litigation. In short, Plaintiffs complain of the extent to which Dwyre zealously represented his clients, and make no supportable allegations that the action was used for an unlawful purpose.

█ Plaintiffs are not complaining about the abuse of process, rather they are complaining about the outcome of the Texas case. Plaintiffs complain that it was improper for the Court to issue an injunction when no claim for injunctive relief had been pled.[6] This is, at heart, a collateral attack on the Texas judgment. The tort of abuse of process is not a vehicle for backdoor attacks on unfavorable verdicts.

### The "Death Penalty" Order

█ The Court also finds it necessary to address the so-called "death penalty order." Hochman has failed to state a claim for abuse of process premised on this order.

First, Plaintiff Hochman is experienced in litigation, having, by his own admission, engaged in numerous cases as a plaintiff, and by defense counsel's submissions, others as a defendant. It is incredible to this Court that Hochman would not know the difference between motion papers written by an attorney and an order issued by the Court. Notably, neither the summons issued to Hochman or the actual order of the Court mention the offending phrase. Rather, Hochman seeks to hold defendant Dwyre liable for the phraseology he used in drafting his legal papers to the Court.

Second, it is also clear that, despite having discharged his Texas counsel, Hochman retained counsel in New York. Yet Hochman would have this Court believe that he could not consult with an attorney to determine what the papers meant (assuming he did not understand them) or what the impact of the order was.

This Court will not premise liability on a sentence in Dwyre's memorandum of law to the Texas court. There is no abuse of process here. Attorneys must be free to employ their choice of phrases in framing an argument. There is no indication that Dwyre misrepresented any facts or legal issues to the Court. *See Zeckendorf v. Lutz,* 282 A.D.2d 295, 723 N.Y.S.2d 360, 361 (1st Dep't 2001). Nor is there any indicia of malice or intent to harm present in these papers. Notably, the sentence does not appear in the section listing the sanctions the Defendants were requesting,

---

6. The Court notes that the damages clause of the Texas complaint does ask for injunctive relief. The Court takes no position on the validity or correctness of the Texas judgment as that issue is not properly before this Court.

and more importantly, it does not appear anywhere in the order granting the now-Defendants' motion, rather the order states that the sanction for non-compliance will be contempt of court. Consequently, Hochman has failed to state a claim for abuse of process based on this order.

## IV. Sanctions

Defendants have moved for sanctions against Hochman and his attorney based on two grounds. First, that they made a material misrepresentation to the Court, and second, that this litigation is frivolous.

Procedurally, it appears that counsel for the Santellanes filed a supplemental affidavit and memorandum of law separately stating the grounds for sanctions as required by FED.R.CIV.P. 11(b). Further, Mr. Hochman and his counsel have corrected the alleged material misrepresentation within the time allowed, thus rendering sanctions on that basis moot.

Rule 11 provides that papers to the court should not be "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." FED. R.CIV.P. 11(b)(1). The Court is troubled by the filing of this lawsuit. In fact, it appears that the exact purpose of this lawsuit was to harass the defendants and to collaterally attack a Texas judgment. Plaintiffs conducted substantial business in the State of Texas and derived substantial revenue from that business, yet attempt to circumvent the Texas judgment by bringing an action in New York federal court. The Court is mindful that this action was brought in New York despite the prior New York state action being dismissed against these same defendants on the basis of inconvenient forum.

Sanctions are committed to the discretion of the trial court. *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 765, 770

(2d Cir.1998). The Court must examine the factual allegations, as well as the underlying legal principles to determine whether the claims were "frivolous, unreasonable, or groundless" in light of controlling law. *Id.* A court should impose sanctions only "if 'it is patently clear that a claim has absolutely no chance of success,' and all doubts should be resolved in favor of the signing attorney." *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.,* 61 F.3d 123, 131 (2d Cir.1995) (quoting *Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir.1993)).

Although it was unreasonable for this action to be filed in New York, the Court will exercise its discretion and not sanction the Plaintiffs or their attorney. The Court is mindful that sanctions should be imposed only in the most severe cases. *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir. 1994). The conduct of Plaintiffs and their attorney, while troubling, does not rise to that level.

## V. Conclusion

Defendants Santellanes' motion to dismiss for lack of jurisdiction is GRANTED. Defendant Dwyre's motion to dismiss for improper venue is GRANTED. In the alternative, all defendants' motions to dismiss for failure to state a claim are GRANTED. The motions for sanctions are DENIED. Plaintiffs' complaint is dismissed with prejudice.

**IT IS SO ORDERED**